36 N.J. Super. 371 (1955)
115 A.2d 639
SYDELLE GOLDEN, OTHERWISE KNOWN AS SYDELLE GOLDEN ARONS, PLAINTIFF,
v.
ERNEST ARONS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 24, 1955.
*372 Mr. Ira J. Katchen, attorney for plaintiff.
Mr. Julius J. Golden, attorney for defendant.
NIMMO, J.C.C. (temporarily assigned).
Plaintiff filed four complaints. The first complaint was filed on October 9, 1953 for annulment of the marriage. The final amended complaint was filed February 3, 1955 in three counts. The first count alleging fraud in substance is for annulment; the second count is for divorce on the ground of desertion; the third count is for divorce on the ground of extreme cruelty. The first two counts were abandoned by plaintiff leaving the third count for extreme cruelty to be adjudicated. Defendant denies each count and does not counterclaim.
The parties were married on May 12, 1950. One child, a girl, was born of the marriage, now four years of age.
Both parties were brought up in the Jewish faith. They were married by a magistrate and a month later were married by a rabbi. On June 15, 1951 defendant entered the armed service and went to Korea. Shortly before defendant left for Korea the child Linda was born. Until defendant's departure they lived as a normal Jewish couple, attending Jewish affairs and observing Jewish holy days and dietary laws. While in Korea defendant became friendly with a Roman Catholic chaplain and became interested in the Catholic faith. Upon defendant's return to the United States he told his wife of his conversion to Catholicism and charged her with being an unfit mother because she would not bring their child up in the faith he had embraced. Before he left for Korea he knew that he had what is termed a kosher home that observed all Jewish dietary laws. Upon his return he belittled all Jewish observances. On days recognized by Jewish people as holy days, he flaunted them. On the Day of Atonement he would turn on the radio in their home as loud as it would be possible and caused great unnecessary noise. He called *373 plaintiff on many occasions in the presence of others a "lousy Jew" and an unfit mother. He became obsessed with his new-found religion and cut his wife off from all her Jewish friends and acquaintances. His discussion of religion became a daily occurrence. Defendant knew that all through their married life his wife was a religious, orthodox Jewess, and very active in Jewish social and charitable organizations, as he was himself until his conversion to Catholicism. Plaintiff is a college graduate of fine sensibilities. While his wife slept he would put a small chain about her neck with a medal in an effort to make her wear it. Observing the parties on the witness stand under examination and cross-examination it became apparent that defendant was determined to convert his wife to his way of thinking no matter what happened. He did state at one time that he would become a Jew again, but it did not appear sincere and further it was not his wife's wish that he return to his former religion but only leave her alone in the religion of her choice that had been his too. The plaintiff it was admitted did go with defendant to the church of his choice and attended Mass several times with him, in an attempt to appease him but that was not sufficient for him. It could be seen that defendant's conduct had greatly affected his wife when she testified. Her health became affected as the household was in a continual turmoil due to defendant's actions and talk.
This is an unusual case in that there does not appear to be any reported cases in New Jersey exactly in point. However, this court did hold in an unreported case, that where a husband of a devout Catholic wife would remove and destroy objects of the Catholic faith and ridicule such things, that it was extreme cruelty and the wife was accorded relief. There is no question that everyone has the freedom of choice of religious solace. It is a thing personal to them. When the religious faith of one is forced on another, courts will take cognizance of the matter. This defendant was and is at liberty to embrace such religion as to him seems best. The nub of this case is not that defendant changed his religion  that he had a perfect right to do  but he tried to force his *374 religion upon his wife to the point where her life was wretched and miserable, that he cannot do. It is inescapable not to conclude that defendant did not absorb the true teaching of Christianity and Catholicism. He became a religious fanatic. There cannot be found any religious tenets which would justify a husband to declare that his wife was leading a vain life and unfit to rear her children because she did not follow him in his religious convictions. Where the conduct of a spouse is calculated to destroy the peace of mind and happiness of the other so as to utterly destroy the objects of matrimony, it amounts to extreme cruelty. The fundamental law of the land guarantees freedom of religion and the right to worship according to the dictates of one's own conscience. As above stated, defendant has that freedom, but he denies it to his wife. Mere diverse religious opinions do not of themselves constitute a cause of action, it is only when, as we have here a forcing of those opinions on another with the resultant effect on the plaintiff, that a cause of action accrues.
People are sensitive concerning their religious beliefs. An irreligious person to whom religion means little or nothing, is beyond the pale of being hurt as would a devout adherent to the tenets of his or her religion. Relief for extreme cruelty can be stated as designed for the sensitive as well as the insensible and apathetic whom nothing but blows can affect.
Counsel urges that because defendant was and is under psychiatric care he might be excused for his acts. Yet, there is nothing to indicate that he did not know what he was doing and it bears out the conclusion of the court that he was fanatical in his treatment of his wife.
Judgment will be entered for plaintiff on the third count of her complaint, and support of the child, to be paid by defendant, is fixed at $25 a week. Counsel fee of $450 and costs will be allowed plaintiff.