1998 SD 83

**Theresa HYBERTSON, Plaintiff and Appellee,**

v.

**Robert E. HYBERTSON, Defendant and Appellant.**

**Nos. 20259, 20268.**

Supreme Court of South Dakota.

Considered on Briefs June 3, 1998.

Decided July 29, 1998.

John K. Nooney and Michael V. Wheeler of Morrill, Thomas, Nooney & Braun, Rapid City, for plaintiff and appellee.

Brian L. Utzman, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] Robert and Theresa Hybertson both appeal from the judgment in their divorce action. Robert claims the trial court erred in granting the divorce on the grounds of extreme cruelty. He also argues the visitation schedule established by the trial court violates the Establishment Clause of the First Amendment to the United States Constitution. Theresa appeals the trial court's denial of her attorney fees. We affirm in part, and reverse and remand in part.

## FACTS

[¶ 2.] Theresa and Robert were married on September 1, 1979, and have two children. Their marriage began to deteriorate after Robert joined the Jehovah's Witnesses religion. Theresa claimed Robert tried to continually impose his newfound religious practices on her and the children. This, she alleged, caused her significant mental suffering.

[¶ 3.] In June 1995, Theresa initiated divorce proceedings. Because divorce other than for adultery goes against his religion's teachings, Robert would not agree to a divorce grounded on irreconcilable differences. The divorce trial was bifurcated. After hearing the evidence in the first stage, the trial court found that, as a result of Robert's actions concerning his religion, Theresa experienced depression, frustration, abandonment, and felt hurt and lost. It therefore granted a divorce on the grounds of extreme mental cruelty. Following the second stage of the trial, the trial court, among other things, granted custody of the children to Theresa and set up a visitation schedule for Robert. The visitation schedule provided that the parties were to divide visitation on the holidays to the extent that each of them celebrated a particular holiday.

[¶ 4.] Robert appeals, raising the following issues:

1. Whether the trial court's finding of extreme mental cruelty was clearly erroneous.

2. Whether the trial court erred in restricting Robert's holiday visitation to only those holidays observed by him as a Jehovah's Witness.

[¶ 5.] Theresa raises the following issue:

3. Whether the trial court erred in denying Theresa's request for attorney fees.

## DECISION

[¶ 6.] **1. The trial court's finding of extreme mental cruelty was not clearly erroneous.**

[¶ 7.] Robert claims the trial court erred in determining that extreme mental cruelty existed as grounds for the divorce. He contends there may have been enough to establish irreconcilable differences but, since he did not consent to that, a divorce should not be granted. *See Dussart v. Dussart*, 1996 SD 41, ¶ 5, 546 N.W.2d 109, 111. We do not agree.

[¶ 8.] The trial court's factual findings establishing grounds for divorce are not to be set aside unless clearly erroneous. *Osman v. Keating–Osman*, 521 N.W.2d 655, 657 (S.D.1994) (citations omitted). We must give "due regard" to the ability of the trial court to judge the credibility of the witnesses. *Id.*

[¶ 9.] SDCL 25–4–4 defines extreme cruelty as "the infliction of grievous bodily injury or grievous mental suffering upon the other, by one party to the marriage." We have held that:

Any definition of extreme cruelty in a marital setting must necessarily differ according to the personalities of the parties involved. What might be acceptable and even commonplace in the relationship between rather stolid individuals could well be extraordinary and highly unacceptable in the lives of more sensitive or high-strung husbands and wives. Family traditions, ethnic and religious backgrounds, local customs and standards and other cultural differences all come into play when

trying to determine what should fall within the parameters of a workable marital relationship and what will not.

*Pochop v. Pochop,* 89 S.D. 466, 467–68, 233 N.W.2d 806, 807 (1975). We must not focus on isolated incidents, but look at the evidence " 'in light of the full context of the marriage[.]' " *Schaack v. Schaack,* 414 N.W.2d 818, 820 (S.D.1987) (quoting *Rykhus v. Rykhus,* 319 N.W.2d 167 (S.D.1982)).

■ [¶ 10.] The trial court's findings that Robert's actions caused Theresa to feel depressed, frustrated, lost, abandoned, and hurt are supported by the evidence. Theresa testified that she felt abandoned by Robert and that his religion was like a "mistress." She felt like she and the children were living in a "Gestapo" environment. Robert would tell Theresa that she would not live in paradise on earth if she was a nonbeliever and that she would "just lay in the dirt." Theresa claims she is no longer able to have a normal conversation with Robert, as he continually states he is there to teach her and the children. He is always quoting Bible verses to her. Theresa also became depressed and felt abandoned because Robert is no longer involved in their former family practices. His religion does not allow him to celebrate holidays and birthdays, or be concerned with other worldly things. This, she claims, has caused a severe rift in the family. She also is concerned over the effect this has had on their children. She specifically worries about some of his beliefs, i.e., he would never permit them to have a blood transfusion should it be necessary.

■ [¶ 11.] Robert claims the United States Constitution and the South Dakota Constitution prevent his religious beliefs from being the basis of grounds for divorce. However, he mischaracterizes the trial court's decision. Robert's beliefs are not the basis of the extreme cruelty, his own actions are. As recognized in *Pochop,* religious backgrounds may be considered in looking at the marital relationship and whether extreme cruelty exists. 89 S.D. at 467–68, 233 N.W.2d at 807. As the trial court found, Robert has a right to his own beliefs, but he does not have the right to force those beliefs on Theresa. *See Smith v. Smith,* 61 Ariz.

373, 149 P.2d 683, 684 (1944) (stating that "[i]t is all right for each [spouse] to have his or her own [n]otions and religious beliefs …, but if one carries such beliefs to the extent of disrupting and destroying the family life, it seems his conduct becomes cruel treatment and outrage[ous] towards his or her mate."); *Sinclair v. Sinclair,* 204 Kan. 240, 461 P.2d 750, 752 (1969) (holding that "[t]he religious zeal of a spouse may be carried to such lengths that domestic harmony is completely disrupted and the legitimate ends of the matrimony destroyed, with the result that the life of the complaining spouse is rendered intolerable."); *Golden v. Arons,* 36 N.J.Super. 371, 115 A.2d 639, 640 (1955) (holding that "[t]he nub of this case is not that defendant changed his religion—that he had a perfect right to do—but he tried to force his religion upon his wife to the point where her life was wretched and miserable, that he cannot do[.]").

[¶ 12.] It must also be stressed that this is not a situation where Robert was a Jehovah's Witness at the time of the marriage. It was the drastic change through Robert's conversion, coupled with his personal actions towards Theresa, that caused the extreme cruelty, not his religion itself.

[¶ 13.] **2. The trial court did not err in restricting holiday visitation to only those holidays observed by Robert as a Jehovah's Witness.**

■ [¶ 14.] A trial court is given broad discretion when considering matters of visitation. *Weber v. Weber,* 529 N.W.2d 190, 191 (S.D.1995). The best interests of the child are to govern visitation matters, and a trial court's order will not be set aside unless an abuse of discretion is shown. *Chicoine v. Chicoine,* 479 N.W.2d 891, 893 (S.D.1992).

■ [¶ 15.] The trial court made the following conclusions as to custody and visitation:

4. [Theresa] shall be the custodial parent of the parties' minor children and [Robert] shall be entitled to liberal visitation, including the right to visitation on every Saturday and every other Sunday, with additional visitation on other days/nights during the week, with the recognition that the

parties must be cognizant of the rights of the children, with [Robert] balancing his respective rights to visitation with the rights of the children; and further [Robert] shall be entitled to a two-week visitation during the months of July and August, with the visitation anticipated during the middle two weeks of each of those months. *The parties shall divide holidays to the extent that holidays are celebrated by them,* consistent with the Seventh Judicial Circuit Child Visitation Guidelines. (Emphasis added.)

Robert argues that this visitation order violates the First Amendment of the United States Constitution, as well as Article VI, § 3, of the South Dakota Constitution.[1] We do not agree.

[¶ 16.] Other jurisdictions have been faced with similar constitutional challenges to custody and visitation orders, and have held that the best interests of the child control. *Pater v. Pater,* 63 Ohio St.3d 393, 588 N.E.2d 794, 798–99 (1992); *Waites v. Waites,* 567 S.W.2d 326, 329 (Mo.1978); *Burrows v. Brady,* 605 A.2d 1312, 1315 (R.I.1992).

[¶ 17.] Robert urges us to follow the Supreme Court of New Hampshire's decision in *Sanborn v. Sanborn,* 123 N.H. 740, 465 A.2d 888 (1983). The *Sanborn* court ruled that a visitation schedule violated the constitution, because it granted the father visitation rights on Christmas Eve, Christmas Day, and Easter, but it did not allow the mother visitation on certain holy days celebrated in her religion. *Id.* 465 A.2d at 894. The court analyzed this question under the three criteria used by the United States Supreme Court for Establishment Clause issues: "(1) the challenged action must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster excessive government entanglement with religion." *Id.* at 893 (citing *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 123, 103 S.Ct. 505, 510, 74 L.Ed.2d 297, 305

(1982) (other citation omitted)); *see also Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). The court held that the visitation schedule failed under the second prong because it favored the father's religion over the mother's. *Sanborn,* 465 A.2d at 894.

[¶ 18.] The present case is entirely different from *Sanborn.* Here, the trial court did not deny Robert any visitation on any holidays which he celebrates. Therefore, it cannot be said the trial court was favoring one religion over another.

[¶ 19.] It is also important to note that the holidays considered under the visitation plan are not all religious holidays. Further, the ones that are religious also have significant secular meaning and, to the extent that Robert were to recognize a secular celebration of those holidays, he would also have visitation rights. Holidays are typically allocated in visitation arrangements because of parents' strong desires to celebrate the holidays with their children, and vice versa.[2] Robert does not celebrate any holidays, so there is not that same need to be together with his children on those days.

[¶ 20.] He has also been granted very liberal visitation, so there is no apparent favoring of Theresa and her religion over Robert's. The trial court specifically stated that it was offering no direction on what religious training to provide the children, and was leaving that decision ultimately up to both parents and the desires of the children. The visitation order in no way inhibits Robert's religion, nor does it advance Theresa's. Indeed, for purposes of the visitation order, the holidays specified are either secular or recognized for their secular aspects.

[¶ 21.] This is not a situation where the trial court favored one religion over another. Robert is not being prevented from practicing his own religion, nor is he prevented from sharing his religion with his children. Granting holiday visitation to a parent, for

---

1. Article VI, § 3, provides, in relevant part: "[N]or shall any preference be given by law to any religious establishment or mode of worship."

2. Theresa testified that one of the reasons the family fell apart was because of Robert's withdrawal from their family traditions of celebrating

the holidays. Given the ages of the children, 11 and 17, they have probably spent most of their lives celebrating holidays, and it is in their best interests to be able to continue those family traditions with their mother.

secular purposes, does not run afoul of the constitution. In *Zummo v. Zummo*, 394 Pa.Super. 30, 574 A.2d 1130, 1157–58 (1990), the court held that a visitation order that required a father who was Catholic to take his children to the Synagogue for Sunday School, thus interrupting his weekend visitation, was not unconstitutional. The court held that both parents have a right to inculcate religious beliefs in their children, and this was merely an accommodation to the mother who was Jewish. *Id.* The father was given extra weeknight visitation to make up for the lost time on Sundays, and the order did not prevent him from teaching his children his religious viewpoints. *Id.* The court observed:

> While such [visitation] provisions generally may be affirmed if they do not otherwise restrict the inculcation of religious beliefs, doubts, or disbeliefs by either parent, we emphasize the constitutional prerequisite of "benign neutrality" towards *both* parent's religious viewpoints. If, for example, the court entered an order which granted a Christian parent custody or visitation on all Christian holy days, but denied similar custody or visitation to the other parent on his or her Jewish holy days ... such a provision might constitute an impermissible restriction on religious and parental rights, and a violation of the Establishment Clause, albeit [an] indirect one.

*Id.* (emphasis in original). In the present case, the visitation order merely accommodates the parent who celebrates the holiday. Robert has been granted liberal visitation, and not having custody of the children on a holiday he chooses not to celebrate does not infringe on any of his religious rights.

[¶ 22.] **3. The trial court must reconsider Theresa's request for attorney fees.**

[¶ 23.] Theresa claims the trial court erred in not requiring Robert to pay her attorney fees amounting to approximately $7,300. The allowance of attorney fees in domestic relations cases rests in the sound discretion of the trial court and will not be reversed without a showing of a clear abuse of that discretion. *Shoop v. Shoop*, 460 N.W.2d 721, 726 (S.D.1990). We find the trial court abused its discretion.

[¶ 24.] SDCL 15–17–7 establishes a two-step process for awarding attorney fees in divorce cases. The trial court must first consider what constitutes a reasonable fee. *Grode v. Grode*, 1996 SD 15, ¶ 37, 543 N.W.2d 795, 804 (citations omitted). Next, the trial court must decide what portion of the fee, if any, should be allowed as costs to be paid by the opposing side. *Id.* (citing *Kier v. Kier*, 454 N.W.2d 544, 547 (S.D. 1990)). If the trial court makes an award, it should consider the following factors: "(1) The property owned by each party; (2) their relative incomes; (3) liquidity of the parties' assets; and (4) whether a party has unreasonably increased the time spent on the case." *Id.* (citations omitted). The following additional factors are also to be considered: "(1) [T]he intricacy and importance of the litigation; (2) labor and time involved; (3) the skill required to draw the pleadings; (4) discovery procedures utilized; (5) existence of complicated legal problems; (6) the time required to try the case; (7) whether written briefs were required; and (8) whether an appeal to this court is involved." *Id.* (citing *Garnos v. Garnos*, 376 N.W.2d 571, 575 (S.D. 1985)). We are also to consider these same factors on appeal. *Id.* (citations omitted).

[¶ 25.] At the time of the divorce, Robert's gross monthly income was approximately $2,482, while Theresa's was approximately $1,516. Thus, her income was significantly less than his. As to liquidity of the parties' assets, the parties were to realize approximately $19,134 in net proceeds from the sale of their marital residence, and Robert was to receive half of this amount in cash, which would then be at his disposal. The trial in this matter was bifurcated, and lasted over two years. Robert heavily contested the grounds issue, but Theresa claims he agreed not to contest custody should he fail on the merits thereof. When he actually did fail, he then attempted to seek custody of the children. Robert argues he never made any such agreement, yet he never objected either of the two times Theresa raised the point at trial. Nevertheless, Robert did hire a clinical psychologist to testify at trial, and Theresa and the children were ordered to undergo psychological evaluations. Then, even

though Robert's expert testified that Theresa should be given custody, Robert still contested that issue. Robert also contested Theresa's motion for exclusive use of the marital home and her request for interim custody and support.

[¶ 26.] The trial court did not articulate its rationale for denying attorney fees, so we reverse and remand this issue to the trial court to consider the factors discussed above in awarding Theresa attorney fees. The trial court should also consider the other factors outlined above, including but not limited to, the fact that this trial was fairly lengthy and involved rather novel and complex legal problems.

[¶ 27.] Affirmed in part, reversed and remanded in part.

[¶ 28.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.