2000 SD 118

**Rochelle REIDER, f/k/a Rochelle Schmidt, Plaintiff and Appellee,**

v.

**Brian Bruce SCHMIDT, Defendant and Appellant.**

**No. 21113.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 2000.

Decided Aug. 30, 2000.

Richard A. Johnson of Strange, Farrell & Johnson, Sioux Falls, South Dakota, for plaintiff and appellee.

Dennis C. McFarland of McFarland & Weidenaar, Sioux Falls, South Dakota, for defendant and appellant.

[¶ 1.] **GILBERTSON, Justice, delivers the majority opinion of the Court as to Issue 1 concerning the trial court's calculation of the abatement of father's child support and the majority opinion concerning mother's motion for an award of appellate attorney's fees.**

[¶ 2.] **KONENKAMP, Justice, delivers the majority opinion on Issue 2 concerning the trial court's modification of father's visitation schedule.**

GILBERTSON, Justice.

## FACTS

[¶ 3.] Brian Schmidt (father) and Rochelle Schmidt (mother) were divorced in 1994 and were granted joint custody of their two children, a four-year-old boy and a two-year-old girl. Mother was granted actual physical custody and father was granted liberal visitation privileges according to a stipulated schedule incorporated into the divorce decree. The schedule left many details open to agreement and visitation became an ongoing dispute between the parties. Both parties interpreted the schedule and made sua sponte modifications to it in a manner most beneficial to them at a particular time. As a result, extensive judicial involvement with visitation was required. Father requested modification of the visitation schedule in 1994 and again in 1995. The trial court entered modification orders in May 1995 and May 1997.

[¶ 4.] In June 1998, mother filed another request for modification of the visitation schedule. Father responded to the request and also sought an abatement of his child support during his extended summer visitation periods. The hearing on the request for modification commenced in June 1998 and, for reasons that are not clear in the record, was continued until January 1999. The trial court issued a memorandum decision at the end of January and findings of fact, conclusions of law and a final judgment in May and June. The judgment provided in pertinent part:

2. That due to [mother's] change in circumstances regarding her employment, as well as [father's] refusal to comply [with] the previous Court Order, the Court now hereby vacates the previous visitation order and now enters a visitation schedule that requires the par-

ties to follow the First Circuit Guidelines, a copy [of] which are attached hereto and by this reference incorporated herein.[1]

3. That the parties shall divide the summer visitation equally.

4. That [father] may choose whether he wants the visitation to be for a consecutive period of time or divided in two blocks of time pursuant to the guidelines. [Father] must notify [mother] by May 1 of each year as to the summer visitation arrangements.

5. [Father's] weekend visitation shall be coordinated with [mother's] desire to have the children together at the same time as her step daughter is present. Weekend visitation shall be on an alternative weekend schedule at the times set forth with the guidelines.

6. That [father] shall receive an abatement for 40% of his child support obligation for time he actually spent with the children. [Father] shall receive an abatement for the three weeks of each month of June, July, and August of 1998. This abatement is calculated by taking the child support divided by the number of days in the month, multiplied by the number of days actually spent with [father], multiplied by 40%.

7. [Father] is allowed an abatement for June of 1998 in the amount of $127.00, July 1998 in the amount of $123.00, and for August of 1998, in the amount of $123.00 for a total abatement of $373.00.

8. [Father] is entitled to a similarly calculated abatement for the summer of 1999 and all future years. (footnote added).

Father appeals.

## ISSUE 1

[¶ 5.] **Did the trial court err in calculating the abatement of father's child support?**

[¶ 6.] Father contends the trial court erred in granting him a 40% abatement of his child support only for those days he actually spent with the children. Father argues the abatement statute, SDCL 25-7-6.14, does not limit abatement to the time actually spent with the children, but provides for a percentage abatement of the full monthly support obligation if certain conditions are met. We agree.

[¶ 7.] SDCL 25-7-6.14 provides:

Unless the parties otherwise agree and the agreement is approved by the court, the court may, if deemed appropriate under the circumstances, *order an abatement of not less than thirty-eight percent nor more than sixty-six percent of the child support* if:

(1) A child spends ten or more days in a month with the obligor;

(2) The number of days of visitation and the abatement percentage or amount are specified in the court order; and

(3) The visitation is actually exercised.

The court shall allow the abatement to the obligor in the month in which the visitation is exercised, unless otherwise ordered.

[¶ 8.] This Court recently reiterated the primary rules of statutory construction in *Zoss v. Schaefers,* 1999 SD 105, 598 N.W.2d 550:

"Statutory interpretation presents a question of law reviewable de novo." *Satellite Cable Srvs. v. Northern Electric,* 1998 SD 67, ¶ 5, 581 N.W.2d 478, 480.

One of the primary rules of statutory ... construction is to give words and phrases their plain meaning and effect. This court assumes that statutes mean what they say and that legislators have said what they meant. When the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and

---

1. The record contains no attachment outlining visitation guidelines.

the court's only function is to declare the meaning of the statute as clearly expressed in the statute.

*Zoss,* 1999 SD 105 at ¶ 6, 598 N.W.2d at 552 (quoting *South Dakota SIF v. CRE,* 1999 SD 2, ¶ 17, 589 N.W.2d 206, 209).

[¶ 9.] The plain language of SDCL 25-7-6.14 makes no mention of abating a "pro-rated" portion of child support based upon days actually spent with the children. Rather, the statute calls for abating a straight percentage "of the child support." The only "child support" contemplated by SDCL ch 25-7 is the monthly support obligation calculated according to the parties' combined net monthly income. *See* SDCL 25-7-6.2. Thus, under the plain language of SDCL 25-7-6.14, if the trial court was going to abate father's child support, it should have granted the abatement as a percentage of his monthly support obligation, not as a percentage of the obligation pro-rated according to days actually spent with the children. While the trial court's approach does find support in an example used in a report issued by the South Dakota Commission on Child Support (Report of the South Dakota Commission on Child Support 21 (1997)), resort may not be had to such reports unless a statute is found ambiguous and some interpretation is required. *See Petition of Famous Brands, Inc.,* 347 N.W.2d 882, 885 (S.D.1984)(resort to legislative history justified only when legislation is ambiguous or its literal meaning is absurd or unreasonable). *See also Whitney v. AGSCO Dakota,* 453 N.W.2d 847, 851 (S.D.1990)(courts must apply law as legislature enacted it and must search for legislative intent by what legislature said rather than what it should have said or might have said).

[¶ 10.] There is no ambiguity in SDCL 25-7-6.14. The conditions it imposes for abatement of child support were apparently met [2] and the trial court erred in failing to grant the abatement as a straight per-

centage of monthly support according to the plain language of the statute. Therefore, the abatement of father's support obligation is reversed and remanded for recalculation according to the plain language of SDCL 25-7-6.14.

[¶ 11.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.

[¶ 12.] **KONENKAMP, Justice writes the majority opinion on Issue 2.**

ISSUE 2

[¶ 13.] **Did the trial court abuse its discretion in modifying father's visitation schedule?**

[¶ 14.] Father argues the trial court abused its discretion in modifying his visitation schedule because the modification was imposed as punishment for his failure to comply with the visitation order already in place rather than as a change in the children's best interests. We do not agree.

[¶ 15.] Trial courts have the authority to modify custody and visitation orders to curb the actions of parents who refuse to cooperate in visitation. SDCL 25-4-45 (best interests of the child guide decisions on custody and modifications of custody). In *Yarnall v. Yarnall,* 460 N.W.2d 161, 164 (S.D.1990), the mother had been cited twice for contempt for failing to cooperate with court-ordered visitation by the father. We held that the trial court did not abuse its discretion in granting the father's request for a change of custody from the mother to the father. In *Nauman v. Nauman,* 445 N.W.2d 38, 39 (S.D.1989), we also found no abuse of discretion when the trial court changed custody from the mother to the father after the mother refused to comply with the visitation order and

---

**2.** The existence of the statutory conditions allowing abatement is not in dispute in this appeal.

otherwise alienated the children from their father.

[¶ 16.] Although in both *Yarnall* and *Nauman* the trial court expressly stated that the custody change was for the best interests of the children involved, that point is well shown by the facts of those cases. Here, as well, the record shows a pattern of behavior by the father that supports the trial court's decision and indicates that the visitation change was in the children's best interests. The modification did not deny father reasonable visitation, but it set a schedule he could not manipulate to the same extent as he had the earlier one.

[¶ 17.] The earlier visitation order called for father to have the children three weeks during the months of June, July, and August, with mother to have two three-day weekends per month during that time, on an alternating basis if possible. Mother was also entitled to visit the children one evening per week during the time they were with their father. Rather than follow this schedule, father admits he "dictated" terms that would be more advantageous to himself. When mother asserted that this was not what the visitation order said, father responded that he was in control of summer visitation, and the judge could "slap his hands" for making the change.

[¶ 18.] Father told mother which weekends he was giving her, arbitrarily switching the visitation schedule. This resulted in mother's weekends in June 1998 falling during weekends she had scheduled graduate classes in Rapid City in reliance on the previously set schedule, and meant she could not be with the children. Father felt this was "too bad" and refused to adjust. The weekend schedule was changed to one four-day weekend and one two-day weekend. He refused to allow mother her one week per month visitation. On several Thursday afternoons during the summer weeks that the children were with their father, she tried to plan afternoon visits with the children in Sioux Falls. She asked father if she could pick the children up at 1:00 in the afternoon and take them swimming or go to a park or some similar activity. Father refused to allow her these visits and insisted she wait until 5:00 to pick up the children because, he argued, they were involved in summer activities during those times and he did not want them to miss out on any of those programs. This also went against the court's declaration during the April 1997 modification hearing that the children are better off with a parent than at daycare and that it would be better for the children to spend time with an available parent. In light of these statements, it is apparent that the trial court's decision was that the father was simply obstructing visitation and not considering the best interests of his two children.

[¶ 19.] Father also showed disdain for the visitation schedule beyond the summer months. On his own, he decided mother "owed him" days with the children that she had with them when there was no school, such as parent-teacher days and Veterans Day. He also felt she "owed him" for several days when he chose to leave the children with her on his visitation days. Rather than stick to the visitation order, father told mother he was making up those days during the children's 1997 Christmas vacation.

[¶ 20.] The previous order was based on the parties' agreement, which the court approved as in the children's best interests. After hearing the facts and observing the parties, the court made specific findings on father's obstructive behavior in violation of the visitation order. The court then ruled that the local "visitation guidelines" should be put into effect. After recognizing that father was unwilling to comply with an agreement that depended on mutual cooperation, the court had little choice but to order a more rigid schedule that father could not manipulate, a schedule that would ensure visitation of the children by both parents. *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 255 (S.D. 1984) (trial court's decision to be given

appropriate deference as it was based on first hand observation of the parties). Enforcing visitation to eliminate strife and obstruction is in the best interests of the children. Certainly, allowing the father's action to continue unrestrained was not in their best interests. These children need stability, and that cannot exist when father takes it upon himself to set his own rules for visitation, disregarding everyone's interests but his own. Remanding this case so the trial court could obligingly intone the words "best interests of the children" would be an unnecessary and ill-advised intrusion on the trial court's authority. "It is our duty to review the record as a whole to see whether or not the evidence supports the trial court's decision to modify." *Jeschke v. Wockenfuss*, 534 N.W.2d 602, 607 (1995) (citations omitted). The facts support the trial court's ruling, and we hold that it was not an abuse of discretion to modify the visitation schedule.

[¶ 21.] MILLER, Chief Justice, and SABERS, Justice, concur.

[¶ 22.] GILBERTSON and AMUNDSON, Justices, dissent as to Issue 2.

[¶ 23.] **GILBERTSON, Justice, writes the majority opinion as to mother's motion for appellate attorney's fees.**

APPELLATE ATTORNEY'S FEES

[¶ 24.] Mother has filed a motion for an award of appellate attorney's fees that is supported by an itemized statement of costs incurred and legal services rendered. *See Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). The motion is denied.

[¶ 25.] MILLER, Chief Justice, and AMUNDSON, Justice, concur.

[¶ 26.] SABERS and KONENKAMP, Justices, dissent and would award mother $1,000 in appellate attorney's fees.

[¶ 27.] **MILLER, Chief Justice, (concurring with Justice Gilbertson as to Issue 1 and with Justice Konenkamp as to Issue 2).**

[¶ 28.] I join Justice Konenkamp's holding on Issue 2 and also agree with Justice Gilbertson's opinion on Issue 1, that the trial court erred in calculating the abatement of father's child support.

[¶ 29.] The 1997 Report of the SD Commission on Child Support, which was relied upon by the Legislature in revising many of the child support laws during that year's session, provides valuable insight on SDCL 25-7-6.14, the abatement statute. The Legislature adopted verbatim the Commission's proposal for that statute.

[¶ 30.] The report reveals that the Commission specifically considered and rejected an abatement that was based upon the number of days actually spent with the children, and instead opted for an abatement of the monthly support obligation:

> A few states have attempted to use an abatement sliding scale based upon the number of days of visitation allowed. However, this approach is a relatively new concept and it lacks economic justification in every case. It can also lead to parental disputes over days of visitation for financial reasons alone. In view of these concerns, the Commission determined not to recommend a daily abatement or sliding scale approach.

Report of the SD Comm'n on Child Support (SD Comm'n on Child Support), Jan. 1997, at 20. In another area of the report, the Commission recommended that "the amount of the abatement be limited to between 38% and 66% of the *monthly* support obligation." *Id.* at 8 (emphasis added).

[¶ 31.] Despite the Commission's apparent rejection of a daily abatement calculation, it then provided the following illustration of the abatement calculation:

> The appropriate abatement is a pro rata share of the monthly support obligation. For example, assume that the support obligation is $100 per month, the court has ordered a 66% reduction for abatement, and visitation is exercised for fifteen days in a month. The obligor

would be required to pay $67.00 in child support. [$100 × ½ month × 66% = $33 abatement. Support due is $100 less $33 abatement = $67.00 obligation].

*Id.* at 21 (footnote omitted). Obviously, this illustration factors in the number of days of visitation actually exercised, in stark contradiction to the Commission's earlier rejection of such an abatement calculation.

[¶ 32.] Notwithstanding its seemingly contradictory illustration, the Commission ultimately recommended, and the Legislature adopted, the following language for the abatement statute:

Unless the parties otherwise agree and the agreement is approved by the court, the court may, if deemed appropriate under the circumstances, order an abatement of not less than thirty-eight percent nor more than sixty-six percent *of the child support* . . .

SDCL 25–7–6.14 (emphasis added). Considering the "actual days" discussion contained in the report, the statute is noticeably silent about whether actual days of visitation should be factored into the calculation.

[¶ 33.] It is unclear why the Commission offered the seemingly contradictory illustration; regardless, such illustration is insufficient to cast doubt on the clear language of the statute. I am persuaded that the proper abatement calculation should not include the number of days actually spent with the children. One must assume the Legislature read the report before amending the statute, and that it, too, rejected a calculation based upon actual days spent with the children.

[¶ 34.] **GILBERTSON, Justice, (dissenting as to Issue 2).**

[¶ 35.] Father argues the trial court abused its discretion in modifying his visitation schedule as punishment for his failure to comply with previous visitation orders. I agree.

[¶ 36.] "A trial court is given broad discretion when considering matters of visitation." *Hybertson v. Hybertson,* 1998 SD 83, ¶ 14, 582 N.W.2d 402, 405. *Accord Weber v. Weber,* 529 N.W.2d 190, 191 (S.D. 1995). " 'However, the trial court's exercise of discretion is not uncontrolled and must have a sound and substantial basis in the testimony.' " *Weber,* 529 N.W.2d at 191 (quoting *Williams v. Williams,* 425 N.W.2d 390, 393 (S.D.1988)). "The best interests of the child are to govern visitation matters, and a trial court's order will not be set aside unless an abuse of discretion is shown." *Hybertson,* 1998 SD 83 at ¶ 14, 582 N.W.2d at 405. *See also Weber,* 529 N.W.2d at 191 (trial court's decision can only be reversed upon clear showing of abuse of discretion).

[¶ 37.] Here, the trial court entered the following findings and conclusions to support its modification of father's visitation schedule:

2. That the previous Court Orders specifically [set] forth how visitation was to be handled between the parties.

3. That [father] refused to follow the previous Court Order entered [in] April 1997 regarding this visitation.

4. [Father] has also refused to grant [mother] her summer visitation which would include one full week each month during the summer. [Father] was entitled to have the children for the three weeks per month.

\* \* \*

6. [Father] also refused to allow [mother] to come and visit the children on her days off during the summer while they were [not] in [father's] care but in daycare.

7. [Mother] has done everything that she could to accommodate [father's] visitation request and personal plans. Often times changing schedules to allow for various family plans that [father asked] to have the children for.

\* \* \*

2. That due to [mother's] change in circumstances regarding her employment, as well as [father's] refusal to

comply [with] the previous Court Order, the Court now hereby vacates the previous visitation order and now enters a visitation schedule that requires the parties to follow the First Circuit Guidelines, a copy [of] which are attached hereto and by this reference incorporated herein.

3. That the parties shall divide the summer visitation equally.

4. That [father] may choose whether he wants the visitation to be for a consecutive period of time or divided in two blocks of time pursuant to the guidelines. [Father] must notify [mother] by May 1 of each year as to the summer visitation arrangements.

5. [Father's] weekend visitation shall be coordinated with [mother's] desire to have the children together at the same time as her step daughter is present. Weekend visitation shall be on an alternative weekend schedule at the times set forth with the guidelines.

[¶ 38.] These findings and conclusions clearly establish that the trial court modified father's visitation schedule as punishment for his lack of compliance with prior visitation orders, not as an arrangement in the children's best interests. The pertinent findings and conclusions reflect no consideration whatsoever of the children's interests, only father's violation of prior visitation orders and his infringement on mother's interests. This clearly violates

settled law on visitation disputes as set forth above. Accordingly, the trial court's modification of the visitation schedule should be reversed and the matter of visitation remanded for appropriate consideration of a schedule in the children's best interests.[3]

[¶ 39.] AMUNDSON, Justice, joins this dissent as to Issue 2.

---

**3.** While the majority ably reviews the record, describing various instances where father failed to honor mother's visitation rights, it identifies not a single finding or conclusion establishing the trial court's consideration of the children's best interests with regard to visitation. It is fundamental that it is not the function of this court to sift through a cold record and pick and choose evidence supportive of the position of one party or the other. Rather, we examine the trial court's findings of fact to ascertain whether they support its conclusions of law and ultimate judgment or determination. *See E.H. v. M.H.*, 512 N.W.2d 148, 151 (S.D.1994)(findings of fact must support conclusions of law and judgment). *See also State ex rel. Steffen v. Peterson*, 2000 SD 39, ¶ 26, 607 N.W.2d 262, 271 (Supreme Court's review is limited to written findings

and conclusions and we ignore the trial court's oral pronouncements). Here, the trial court's findings fail to support its conclusions and judgment. While the trial court's findings and conclusions might accurately detail father's violation of certain visitation requirements, they fail to contain the essential component of consideration of the children's best interests. Thus, this matter should be reversed and remanded so that visitation may appropriately be considered from the children's point of view and not solely on the basis of the actions of father. Father's violation of mother's visitation rights is statutorily punishable as contempt (*See* SDCL ch. 25-4A) and should not be summarily met with a reduction in his own visitation rights that might not be in the children's best interests.