2004 SD 103

**Bruce A. CRISMAN, Plaintiff and Appellant,**

v.

**DETERMAN CHIROPRACTIC, INC., Defendant and Appellee.**

**Nos. 22968, 22976.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 2004.

Decided Sept. 8, 2004.

John K. Nooney of Thomas Nooney Braun Solay & Bernard, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Thomas G. Fritz of Lynn Jackson Shultz & Lebrun, Rapid City, South Dakota, Attorneys for defendant and appellee.

GORS, Circuit Judge.

[¶ 1.] Dr. Crisman sued Determan Clinic after he was fired by Dr. Determan. Dr. Crisman appeals the denial of double damages and the reduction of attorney fees. Dr. Determan filed a notice of review appealing the determination that Dr. Crisman was the prevailing party entitled to attorney fees. We affirm and remand for findings of fact and conclusions of law on attorney fees.

## FACTS

[¶ 2.] Dr. Determan owns and operates a chiropractic clinic known as Alternate Healthcare Center of the Black Hills or Determan Chiropractic, Inc., (Determan Clinic) in Rapid City, South Dakota. Dr. Crisman is a licensed chiropractor who began to work for Determan Clinic in October 1996. The relationship between Determan Clinic and Dr. Crisman was set forth in a document entitled "Employment Agreement" dated October 28, 1996, which expressly noted that it was not an employment contract.

[¶ 3.] The 1996 employment agreement provided that Dr. Crisman was an at-will employee. In a clause, inconsistent with at-will employment, the agreement also provided that the employer would give ninety days written notice prior to terminating the employee. The 1996 employment agreement included a noncompetition agreement. The 1996 employment agreement also provided that "In the event that any legal action or arbitration is filed in connection with this agreement, the prevailing party shall be entitled to all costs and reasonable attorney's fees in any such action relating to this agreement."

[¶ 4.] On January 6, 1997, Dr. Crisman and Dr. Determan signed a nine page office policy. The 1997 office policy expressly noted that it was not an employment contract. The office policy made no refer-

ence to the ninety days written notice of job termination that was found in the original 1996 employment agreement. Instead the office policy noted that all staff were at-will employees and their employment could end with or without notice at any time. The office policy expanded the non-competition agreement from a 25 mile radius to a 50 mile radius and provided for reimbursement for training costs incurred by the Determan Clinic as damages if the noncompetition agreement was violated.

[¶ 5.] Dr. Crisman was paid on the 15th of each month. Dr. Crisman's monthly salary was $2,100 plus a percentage of the monthly receipts in excess of $7,000 (30% over $7,000, 35% over $10,400 and 40% over $14,600).

[¶ 6.] Over time Dr. Crisman and Dr. Determan lost confidence in one another.

[¶ 7.] On January 10, 2002, Dr. Determan sent a message to, "All Staff & Drs," which read:

> As per our conversation today—you need to show up at our a.m. 'sched review' meetings w/your planner. If you don't show up w/your planner tomorrow—you won't show up on Monday, and so on for each meeting.

Dr. Crisman had never been required to bring his planner with him to a meeting. Dr. Crisman did bring his planner to the staff meeting on January 11, 2002. When Dr. Determan asked to see it, Dr. Crisman refused, claiming it was personal property like his wallet. Dr. Determan then told Dr. Crisman that he was through and no longer worked at Determan Clinic.

[¶ 8.] On January 15, 2002, Dr. Crisman sent a letter to Dr. Determan requesting pay for work performed through Saturday, January 12, 2002, and pay for accrued vacation. On January 17th Dr. Crisman asked for his check and was told that it could not be located. Dr. Crisman

filed a summons and complaint on January 17, 2002, seeking wages for December 2001 through January 12th plus accrued vacation, double damages and ninety days severance pay. The complaint also sought an accounting of receivables realized by the clinic relating to his employment as well as a declaratory judgment on the noncompetition agreement, costs and attorney fees.

[¶ 9.] Dr. Determan was deposed on March 5, 2002. When asked why Dr. Crisman was not paid, he replied, "because I have not paid him." Dr. Determan's answer, counterclaim and application for restraining order and preliminary injunction sought to enforce the noncompetition agreement in the 1996 employment agreement.

[¶ 10.] Dr. Crisman received his December wages on March 11, 2002. They were later determined to be $161.03 short. He received a partial payment for the first 12 days of January on April 30, 2002.

[¶ 11.] The trial court held that Dr. Crisman was underpaid for December by $161.03, and January by $4,357.67. The court determined that the wages for January needed to include two weeks of vacation and a percentage of receipts prorated through his vacation time. The trial court held that Dr. Crisman was the prevailing party and awarded costs of $3,365.12 and $10,000 in attorney fees.

[¶ 12.] Dr. Crisman appeals the denial of his claim for double damages and reduction of his claim for attorney fees from $35,579.50. Dr. Determan filed a notice of review of the determination that Dr. Crisman was the prevailing party entitled to attorney fees.

### STANDARD OF REVIEW

[¶ 13.] The standard of review for the issue of whether the failure to timely pay wages was oppressive, fraudu-

lent or malicious conduct is a mixed question of fact and law. *Baldwin v. National College*, 537 N.W.2d 14, 17 (S.D.1995). The trial court's findings of fact are reviewed under the clearly erroneous standard and findings will not be disturbed unless this Court is left with a definite and firm conviction that an error was made. *Id.* Conclusions of law are reviewed de novo. *Hoffman v. Olsen*, 2003 SD 26, ¶ 7, 658 N.W.2d 790, 792. Statutes are interpreted de novo without deference to the trial court. *Estate of Fountain v. Schroeder*, 2001 SD 139, ¶ 6, 637 N.W.2d 27, 28. Mixed questions of fact and law are reviewed de novo. *Id.*

## DECISION

### Double Damages

[¶ 14.] Dr. Crisman's employment was terminated on January 11, 2002. Dr. Crisman sued on January 17, 2002. Dr. Determan did not pay Dr. Crisman's December wages until March 11, 2002, and did not pay his January wages until April 30, 2002. Both payments were less than the trial court ultimately awarded. SDCL 60–11–10 requires prompt payment of wages from an employer upon an employee's termination at the next regular pay day which was January 15, 2002, for Dr. Crisman's December 2001 wages. Dr. Crisman asked for double damages under SDCL 60–11–7 which provides:

> In any action for the breach of an obligation to pay wages, where a private employer has been oppressive, fraudulent, or malicious, in his refusal to pay wages due to the employee, the measure of damages is double the amount of wages for which the employer is liable.

The trial court held that Dr. Determan's conduct was not oppressive.

[¶ 15.] "Whether conduct is oppressive is a legal conclusion." *Lien v. Lien*, 2004

SD 8, ¶ 30, 674 N.W.2d 816, 825; *Landstrom v. Shaver*, 1997 SD 25, ¶ 37, 561 N.W.2d 1, 7. A legal conclusion of oppressive conduct must be supported by the trial court's findings of fact. *Baldwin*, 537 N.W.2d at 19. In *Baldwin*, which was also a double damages lawsuit under SDCL 60–11–7, this Court applied the dictionary definition of oppressive as "unreasonably burdensome: unjustly severe, rigorous, or harsh." *Id.* In South Dakota Civil Pattern Jury Instruction 35–03 oppression is also defined as "conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."

[¶ 16.] Here, as in *Baldwin*, there are no facts that support a finding that Dr. Determan's conduct was "unjustly severe, rigorous, or harsh." *Baldwin*, 537 N.W.2d at 19. Dr. Crisman argues that Dr. Determan's conduct was oppressive because he did not give a reason, or alternatively a good reason, for withholding his wages. However, Dr. Crisman sued not just to collect undisputed wages due, but for a judicial determination of the amount of wages due and for other relief. Dr. Determan, like National College in *Baldwin*, was "merely exercising [his] right to have a judicial determination made on the obligation" under the terms of employment. *Id.*

[¶ 17.] There was a genuine dispute about what Dr. Determan owed Dr. Crisman. Dr. Crisman not only sued Dr. Determan for double his December wages but also for an additional ninety days wages under the ninety days notice provision in the original 1996 employment agreement. However, the trial court held that the subsequent 1997 office policy modified the 1996 employment agreement. Consequently, Dr. Crisman was not entitled to ninety days notice and pay before separation. In addition, the monthly bonus payable to Dr. Crisman based on a percentage of the

receipts was in dispute. Finally, there was a dispute over whether Dr. Crisman was entitled to vacation pay. The amounts could not be determined until the trial court developed a formula, calculated the December and January wages, and resolved the severance and vacation pay issues. Ultimately, the trial court determined that the wages for both December and January were less than the amount claimed by Dr. Crisman and greater than the amount paid by Dr. Determan. The trial court found that the need to determine a formula and to calculate[1] the wages was evidence that there was a genuine dispute. Therefore, the trial court concluded that there was no oppression. We agree that the delay in payment of the disputed wages in this case, pending a judicial determination, failed to rise to the level of oppression. The trial court did not err by denying double damages.

### Attorney Fees

[¶ 18.] The 1996 employment agreement provided that:

> In the event that any legal action or arbitration is filed in connection with this agreement, the prevailing party shall be entitled to all costs and reasonable attorney fees in any such action relating to this agreement.

In addition to the judgment for $4,518.70, Dr. Crisman claimed he was entitled to costs[2] and attorney fees under the 1996 employment agreement. The trial court awarded Dr. Crisman $10,000 of the $35,579.50 Dr. Crisman sought for attorney fees. Dr. Crisman appealed the reduction of his fees to $10,000 and Dr. Determan filed a notice of review to appeal the trial court's determination that Dr. Crisman was the prevailing party. Dr. Determan did not appeal the amount of the attorney fees.[3] We will address Dr. Determan's notice of review first because Dr. Crisman was not entitled to attorney fees if he was not the prevailing party.

### Prevailing Party

[¶ 19.] The standard of review for determining who was the prevailing party is abuse of discretion. SDCL 15–17–37; *Ridley v. Lawrence County Com'n*, 2000 SD 143, ¶ 12, 619 N.W.2d 254, 259; *City of Aberdeen v. Lutgen*, 273 N.W.2d 183, 185 (S.D.1979).

[¶ 20.] Dr. Determan challenged whether Dr. Crisman was the prevailing party. According to Dr. Determan, Dr. Crisman did not prevail because he sued under the 1996 employment agreement and the trial court ruled that the 1997 office policy modified the 1996 employment agreement. Dr. Determan then concludes that he prevailed because the trial court awarded Dr. Crisman significantly less than he demanded in his complaint.

[¶ 21.] Dr. Determan cites *Geraets v. Halter*, 1999 SD 11, ¶ 20–21, 588 N.W.2d 231, 235, where the Geraets sued the Halters for specific performance of a land sale agreement. Instead, they received a money judgment which the Halters did not contest. The court determined the Halters were the prevailing party because the Geraets lost their specific performance

---

1. Dr. Crisman admitted during his testimony that Dr. Determan had been overpaying him by refiguring the salary calculations Dr. Crisman submitted. However, when the error was in his favor, Dr. Crisman did not complain.

2. The trial court taxed the full $3,365.12 submitted by Dr. Crisman for costs. Dr. Determan did not appeal the award of costs in his notice of review.

3. In his brief, Dr. Determan concedes: "If this Court finds that Dr. Crisman was the prevailing party, $10,000 in attorney fees is more than reasonable."

claim. By analogy, Dr. Determan argues that since Dr. Crisman sued on the 1996 employment agreement but prevailed under the 1997 office policy, Dr. Crisman actually did not prevail.

[¶ 22.] On its face, the posture of the appeal supports Dr. Determan's view because Dr. Crisman appealed the amount of his judgment and the amount of attorney fees awarded. Dr. Determan only noticed for review the trial court's determination that Dr. Crisman was the prevailing party. Usually, the non prevailing party appeals and the prevailing party does not appeal. However, in the law, nothing is as simple as it looks.

[¶ 23.] Having just presided over the case, the trial court was in the best position to determine which party prevailed. In *Lutgen*, 273 N.W.2d at 185, this Court held: "The prevailing party is the party in whose favor the decision or verdict is or should be rendered and judgment entered." While Dr. Determan did succeed in cutting his losses, Dr. Determan still did not prevail. Dr. Crisman not only obtained a money judgment, which was the essence of his lawsuit, but also he prevailed on the noncompetition clause and vacation pay. Dr. Crisman prevailed. Dr. Crisman was not required to prevail on every issue to be the prevailing party. *Alvine v. Mercedes–Benz of North America*, 2001 SD 3, ¶ 25, 620 N.W.2d 608, 613. The trial court did not abuse its discretion in determining that Dr. Crisman was the prevailing party.

*Reasonable Attorney Fees*

[¶ 24.] An award of attorney fees is reviewed under the abuse of discretion standard. *City of Sioux Falls v. Johnson*, 2003 SD 115, ¶ 6, 670 N.W.2d 360, 362.

[¶ 25.] Dr. Crisman sought attorney fees of $35,579.50. The trial court reduced the attorney fees award to $10,000. Dr. Crisman alleges that $10,000 does not reflect reasonable attorney fees and is an abuse of discretion. Conversely, Dr. Determan concedes that the $10,000 award is reasonable if Dr. Crisman is the prevailing party.

[¶ 26.] The American rule is that each party bears the party's own attorney fees. *Public Entity Pool for Liability v. Score*, 2003 SD 17, ¶ 7, 658 N.W.2d 64, 67–68. However, attorney fees are allowed when there is a contractual agreement that the prevailing party is entitled to attorney fees or there is statutory authority authorizing an award of attorney fees. *City of Aberdeen v. Rich*, 2003 SD 27, ¶ 25, 658 N.W.2d 775, 781. Here attorney fees are provided to the prevailing party under the 1996 employment agreement.

[¶ 27.] This Court has set forth factors for the trial court to consider in setting attorney fees in numerous decisions. Recently, in *Duffy v. Circuit Court Seventh Jud. Cir.*, 2004 SD 19, ¶ 16, 676 N.W.2d 126, 134, and *Atchison v. Seventh Judicial Circuit*, 2004 SD 20, ¶ 3, 676 N.W.2d 814, 816, this Court determined the factors for consideration in determining court appointed attorney fees:

(1) the time spent and services rendered;

(2) the complexity of the case and difficulty of the questions involved;

(3) the character and importance of the litigation;

(4) the skill required to perform the legal service properly;

(5) the time limitations imposed by the client or by the circumstances;

(6) the fee customarily charged in the locality for similar legal services;

(7) the experience, reputation, and ability of the lawyer performing the services; and

(8) the possible punishment involved.

*Duffy,* 2004 SD 19, at ¶ 16, 676 N.W.2d at 134.

[¶ 28.] The factors to be considered in awarding attorney fees in a civil case are set forth in *City of Sioux Falls v. Kelley,* 513 N.W.2d 97, 111 (S.D.1994):

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[¶ 29.] Similar factors to be considered in awarding attorney fees in divorce cases are set forth in *Ryken v. Ryken,* 440 N.W.2d 300, 305–06 (S.D.1989); *Garnos v. Garnos,* 376 N.W.2d 571, 575 (S.D.1985); and *Hybertson v. Hybertson,* 1998 SD 83, ¶ 24, 582 N.W.2d 402, 407. In addition to considering the property owned by each party, their relative incomes and the liquidity of their assets, the following factors are to be considered:

(1) the intricacy and importance of the litigation,

(2) labor and time involved,

(3) the skill required to draw the pleadings,

(4) discovery procedures utilized,

(5) existence of complicated legal problems,

(6) the time required to try the case,

(7) whether written briefs were required,

(8) whether an appeal to the Supreme Court was involved, and

(9) whether a party has unreasonably increased the time spent on the case.

[¶ 30.] This Court has consistently required trial courts to enter findings of fact and conclusions of law when ruling on a request for attorney fees. *Hoffman v. Olsen,* 2003 SD 26 at ¶ 10, 658 N.W.2d at 793. Without findings of facts and conclusions of law there is nothing to review. Factors for the trial court to use to consider the reasonableness of attorney fees come from prior cases and the Model Rules of Professional Conduct. *Duffy,* 2004 SD 19, ¶ 16, 676 N.W.2d at 134.

The fee should not be based on any one single factor but all of these matters should be taken into consideration. The only requirement is that the fee which the court fixes in each case must be reasonable for the services rendered.

*Id.* While calculation of fees must begin with the hourly fee multiplied by the attorney's hours:

We are not under the illusion that a 'just and adequate' fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees. However, we are convinced that this simple mathematical exercise is the only legitimate starting point for analysis. It is only after such a calculation that other, less objective factors, can be introduced into the calculus.

*Id.* The trial court is required "to make specific findings based upon the factors." *Id.* at ¶ 18.

[¶ 31.] In this case, the trial court held a hearing on July 1, 2003, to consider findings of fact, conclusions of law, costs and attorney fees. The only finding of fact addressing reasonable attorney fees was 31:

> In conjunction with paragraph XIV, subpart f of Trial Exhibit 1 [Employee Agreement], the Court finds as a matter of fact that the Plaintiff has incurred reasonable attorney fees in the amount of $10,000.

The sole conclusion of law addressing reasonable attorney fees was 18, "Plaintiff is entitled to attorney's fees in the amount of $10,000." The trial court stated the following during the hearing on attorney fees held on July 1, 2003:

> I'm going to award Dr. Crisman reasonable attorney's fees based upon the evidence I heard in this case, that everybody heard, I'm going to award attorney's fees in the amount of $10,000. . . . The Plaintiff is entitled to attorney's fees which I have determined to be reasonable, in view of all I have heard in this matter of $10,000 total. That will include sales tax.

The trial court's reduction of Dr. Crisman's attorney fees from $35,579.50 to $10,000 was apparently based on frustration with the parties' failure to bring up the 1997 office policy which modified the 1996 employment agreement until the trial was in progress. Dr. Crisman sued on the 1996 employment agreement. Dr. Determan defended on it. Then the 1997 office policy surfaced. Dr. Crisman had not mentioned it and Dr. Determan had not remembered it. Nevertheless, the 1997 office policy was determinative on several issues, including the noncompetition agreement, vacation pay and the ninety days notice issue. The trial court made it clear that the attorney fees incurred would have been substantially less if the parties had brought up the 1997 office policy in a timely manner. At the hearing on attorney fees, the trial court said "I think maybe both of you spent too much time on this case."

[¶ 32.] We also note that the $35,579.50 attorney fees plus $3,365.12 costs total $38,944.62 which does not compare favorably with the $4,518.70 judgment recovered. Going one step farther, the maximum potential financial recovery viewed in the light most favorable to Dr. Crisman would have been $30,779.79.[4] The potential recovery pales next to the expenditure of $38,944.62 in costs and attorney fees.

[¶ 33.] The hearing transcript and the findings of fact and conclusions of law do not disclose that the trial court considered the required factors in formulating a conclusion that reasonable attorney fees were $10,000. *Johnson*, 2003 SD 115, ¶ 8, 670 N.W.2d at 362–63. Here, as in *Atchison*, the trial court,

> explained the reasons for reducing [the attorney's] fees, the explanation did not apply the correct legal standard in determining whether the attorney fees were just and reasonable. Consequently, the court did not regularly pursue its authority. We, therefor, remand . . . to apply the correct standard and procedure. On remand [the trial court] is to reconsider the reasonableness of [the] attorney fees by taking into consider-

---

4. The potential recovery included December's wages of $5,252.22 plus the $161.03 underpayment for a total of $5,413.25. Double the undisputed December wages for another $5,252.22. Add January's wage for twelve days plus two weeks vacation for $4,357.67. Finally add wages for the ninety day notice claimed under the 1996 employment agreement (using December's $5,252.22 as an average) for another $15,756.66. The total is $30,779.79.

ation all of the reasonableness factors and by giving an explanation based upon those factors.

2004 SD 20, ¶ 10, 676 N.W.2d at 819. We are unable to determine from this record whether the trial court abused its discretion in reducing Dr. Crisman's attorney fees to $10,000.

## CONCLUSION

[¶ 34.] We affirm the denial of double damages. We affirm the determination that Dr. Crisman was the prevailing party entitled to attorney fees under the 1996 employment agreement. We remand for findings of fact and conclusions of law after consideration of the appropriate factors for award of attorney fees. We award Dr. Crisman $3,000 attorney fees on appeal.

[¶ 35.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 36.] GORS, Circuit Judge, for SABERS, Justice, disqualified.