2004 SD 19

**Veronica L. DUFFY, Petitioner,**

v.

**CIRCUIT COURT for the SEVENTH JUDICIAL CIRCUIT, Respondent.**

No. 22837.

Supreme Court of South Dakota.

Argued on Nov. 18, 2003.

Decided Feb. 11, 2004.

Lawrence E. Long, Attorney General, Jeffrey P. Hallem, Assistant Attorney General, Pierre, South Dakota, Attorneys for respondent.

MEIERHENRY, Justice.

[¶ 1.] The Seventh Judicial Circuit Court appointed Veronica Duffy, attorney at law, as counsel in four cases involving two indigent persons. Duffy submitted verified vouchers with itemized charges for her fees in each case. Circuit Court Judge Janine Kern reduced the bills by a total of $5957.41.[1] Fees for the four cases were reduced as follows: (1) CRI02–617 from $7,190.73 to $6,100, (2) CRI02–3791 from $2,187.30 to $1,356.19, (3) A02–0530 from $5,281.29 to $3,585.15, and (4) CRI 02–2049 from $6,633.84 to $4,294.41. Duffy requested an explanation for Judge Kern's reductions. She also asked that the judges of the Seventh Judicial Circuit review Judge Kern's decision. In response, Judge Kern provided Duffy with copies of the original vouchers in two of the cases marked with highlighting showing some items and fees reduced and some struck completely, but provided no explanation for the reduction in the other two cases. As requested, the judges of the Seventh Judicial Circuit scheduled a hearing. Duffy was to submit all evidence in writing prior to the scheduled hearing and was informed that she would be allowed fifteen minutes to present oral argument. A panel of four judges conducted the hearing.[2] The panel issued a memorandum decision affirming the reduced fees. Duffy petitioned this Court for Writ of Certiorari.

*Review of Court Appointed Attorney Fees by Writ of Certiorari*

[¶ 2.] Counsel for the judges of the Seventh Judicial Circuit challenges

Veronica L. Duffy, Rapid City, South Dakota, Pro Se petitioner.

1. The total is the amount tabulated from the four separate Orders Affirming Fee Reduction.

2. The panel consisted of Judges Trimble, Tice, Davis and Kern.

whether this Court has jurisdiction to review the lower court's decision on attorney fees. Counsel claims that this Court's jurisdiction on a writ of certiorari is limited to determining whether a lower court had the power to act and not whether the court's decision was correct. Counsel further argues that the lower court's decision can only be reviewed by direct appeal. Duffy claims that this Court has jurisdiction in the form of a writ of certiorari because the lower court has exceeded its jurisdiction by committing a gross abuse of discretion in disallowing reasonable and just compensation and is, therefore, subject to a writ of certiorari.[3]

[¶ 3.] A writ of certiorari is an equitable remedy available when an inferior court exceeds its jurisdiction "and there is no writ of error or appeal nor, in the judgment of the court, any other plain, speedy, and adequate remedy." SDCL 21–31–1. The scope of review "cannot be extended further than to determine whether the inferior court ... has regularly pursued the authority of such court." SDCL 21–31–8. Other courts have looked at this issue and determined that because of the nature of the claim, a writ of certiorari is the proper procedure to review court appointed attorney fees. *Bye v. District Court*, 701 P.2d 56, 59 (Colo.1985); *Norton v. Iowa Dist. Court for Cedar County*, 554 N.W.2d 301, 303 (Iowa App. 1996); *Green v. Iowa Dist. Court for Mills County*, 415 N.W.2d 606, 607 (Iowa 1987).

[¶ 4.] A trial court's review of an attorney's fee for a court appointment is collateral to an underlying case. The Rules of Appellate Procedure set forth the types of judgments and orders which can be appealed. SDCL 15–26A–3. In this case, the Order affirming the reduction in fees is not a separately filed case and bears the case number of the criminal cases for which the services were provided. The only category of appeal under which it could conceivably fall is SDCL 15–26A–3(4) as a "final order affecting a substantial right, made in special proceedings, or upon a summary application in an action after judgment." *Id.*

[¶ 5.] Yet, limiting review to a direct appeal rather than by writ of certiorari presents its own set of unique circumstances. For example, the court's action in reducing the fee does not start out as a lawsuit in the usual way by one party serving a summons and complaint. Neither the attorney nor the court is a party in the underlying case. The attorney is involved only because the court ordered the attorney to represent the indigent party. When the underlying case is appealed, the attorney fee issue may not be ripe for appeal because the attorney's services have not been completed. Additionally, the attorney on appeal may not be the same attorney that tried the case below.

[¶ 6.] The trial court's review of court appointed attorney fees is more in the form of an administrative function collateral to the underlying case. It is unlike other cases which allow a court to award attorney fees as part of the judgment to be paid by the opposing party, such as in a divorce or condemnation action. Court ap-

3. The parties dispute whether a prior review of court appointed attorney fees in *Tappe v. Circuit Court* was based on a writ of certiorari or direct appeal. 326 N.W.2d 892 (S.D. 1982). The *Tappe* opinion characterizes the action as an appeal. Initially, however, the attorney had filed an Application for Writ of Certiorari asking the Court to review the trial court's Order cutting his fees. *Id.* at 894. The Court denied the Writ "with the proviso that appellant could reapply for the writ if a hearing on the matter was denied by the circuit court." *Id.* The circuit court held a hearing and Tappe directly appealed from that hearing.

pointed attorney fees are not paid by the opposing party but from the county treasury. The procedures governing the submission, approval and review of attorney fees is set by the presiding judges and is separate from the underlying case. SDCL 23A–40–8, 23A–40–9.[4]

### Scope of Review

[¶ 7.] Courts that have found a writ of certiorari an appropriate means to bring the issue before a higher tribunal have limited the scope of review. *Lunde v. Ruigh*, 356 N.W.2d 566, 569 (Iowa 1984); *Bye*, 701 P.2d at 60 (Colo.1985). The Iowa Supreme Court limits review to whether the lower court used the correct legal standard and whether it abused its discretion in applying the correct legal standard. *Lunde*, 356 N.W.2d at 569. The Iowa Court stated:

[T]here are two types of challenges to trial court orders determining compensation for court-appointed counsel; (1) those asserting that an incorrect legal standard has been applied in fixing fees; and (2) those asserting an abuse of discretion in the application of the proper legal standard. We pointed out in *Walters* that:

Our scope of review depends on what part of the challenge is being considered. Plaintiff's assertion that an incorrect legal standard was applied is reviewed on error. When an incorrect standard is applied we remand for new findings and application of the correct standard. When a correct legal standard is applied our review is greatly circumscribed; we affirm unless the trial court's discretion "was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable."

*Lunde*, 356 N.W.2d at 569 (citing *Walters v. Herrick*, 351 N.W.2d 794, 796 (Iowa 1984)). The Court further clarified "an abuse of discretion" challenge as limited to whether the lower court "abused its discretion to the extent that it acted illegally in setting the fee." *Green*, 415 N.W.2d at 609.

[¶ 8.] Similarly, Colorado courts limit a review of court appointed attorney fees to whether a lower court "has exceeded its jurisdiction or abused its discretion in exercising its functions, and appeal is not an appropriate remedy." *Bye*, 701 P.2d at 59 (citing *Prudential Property & Casualty Insurance Co. of America v. District Court*, 617 P.2d 556, 558 (Colo.1980)).

[¶ 9.] We determine that Duffy has properly brought this matter as a writ of certiorari because in this case, "there is no

---

**4.** SDCL 23A–40–8 and –9 set forth the county's responsibility to pay and judge's responsibility to fix the amount within the presiding judge's guidelines.

Counsel assigned pursuant to § 23A–40–6 and subdivision 23A–40–7 (2) shall, after the disposition of the cause, be paid by the county in which the action is brought, or, in case of a parole revocation, by the county from which the inmate was sentenced, a reasonable and just compensation for his services and for necessary expenses and costs incident to the proceedings in an amount to be fixed by a judge of the circuit court or a law trained magistrate within guidelines established by the presiding judge of the circuit court.

SDCL 23A–40–8.

If proceedings after judgment and conviction are taken, by motion in arrest of judgment, motion for a new trial or any presentence or postsentence proceedings, or an appeal to the Supreme Court, an allowance for a sum as may be reasonable and just for the services rendered and for necessary expenses and cost incident to the proceedings shall be allowed to counsel assigned by the court pursuant to § 23A–40–6 and subdivision 23A–40–7 (2), in an amount to be set by a judge of the circuit court or a law trained magistrate within guidelines established by the presiding judge of the circuit court.

SDCL 23A–40–9.

writ of error or appeal nor, in the judgment of the court, any other plain, speedy, and adequate remedy." SDCL 21–31–1. However, the scope of review is limited to whether the trial judge and/or the Seventh Circuit court "has regularly pursued the authority of such court." SDCL 21–31–8. In order to determine whether the court has "regularly pursued" its authority, it is important to review the background of court appointed attorney fees and the court's authority in approving the fees under South Dakota law.

### Background of Compensation for Court Appointed Attorney Fees

■ [¶ 10.] We begin with the premise that appointed counsel serves an invaluable service in maintaining the integrity of our criminal justice system. The Sixth Amendment to the United States Constitution guarantees a right to counsel for criminal defendants. The importance of this right has been expressed by the United States Supreme Court in numerous cases. It was succinctly explained in *U.S. v. Cronic*:

> An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." Their presence is essential because they are the means through which other rights of the person on trial are secured. Without counsel, the right to a trial itself would be "of little avail," as this Court has recognized repeatedly. "Of all the rights that an accused person has, the right to be represented by coun-

sel is by far the most pervasive, for it affects his ability to assert any other right he may have."

466 U.S. 648, 653–54, 104 S.Ct. 2039, 2043–44, 80 L.Ed.2d 657 (1984). In fact, criminal defendants possess the right of *effective assistance* of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). One way South Dakota meets this demand is to appoint private counsel to represent indigent defendants. SDCL 23A–40–8; SDCL 23A–40–9. Although lawyers are encouraged to provide public services,[5] it has long been realized that lawyers cannot afford to provide effective assistance of counsel to indigent defendants without compensation.

[¶ 11.] At least since *Gideon v. Wainwright*, state courts, county commissioners, and attorney groups have been challenged by how best to provide indigent clients with their Sixth Amendment right to counsel.[6] 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In South Dakota, the legislature has provided assistance of counsel for indigents since 1901.[7] The legislature has amended the statutes several times[8]; however, since 1901 it has always included the language that appointed counsel shall receive "a reasonable and just compensation." In addition to the legislative responses to appointed counsel legal fees, joint committees have been formed periodically to study the issues surrounding the fees. One concern was that each circuit and judge had its own method of determining fees. Some believed that the fee

---

5. SDCL ch 16–18, Appx. South Dakota Rules of Professional Conduct, Preamble ¶ 5 (1988).

6. *Gideon* holds that the Sixth Amendment right to counsel in felony trials applied to the states. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Supreme Court expanded that right in *Argersinger v. Hamlin* by holding that defendants of even misdemeanors must be provided counsel or they could not be

incarcerated. 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

7. SL 1901, ch 109.

8. SDRC ch 4 § 553 (1903); SDC 1939, § 34.1901; SL 1957, ch 182; SDCL, §§ 23–2–2, 23–2–3; SL 1968, ch 147; 1969, ch 155; 1978, ch 178, § 493; SDCL Supp, § 23A–40–4; SL 1979, ch 159, § 35; 1983, ch 191 § 2.

schedule should be uniform across the state.

### South Dakota Rules for Compensation of Court Appointed Counsel

[¶ 12.] In 1998, a committee composed of legislators, judges and lawyers studied appointed counsel fees and proposed rules for compensation. The proposed rules were approved by the presiding judges of the judicial circuits in November 1999 to be effective January 1, 2000.[9] The rules

9. Although referred to as rules, they were not adopted through a rules hearing. They were implemented by Order by the presiding judges of each circuit and published in the South Dakota State Bar Newsletter. The Rules in their entirety are as follows:

### RULES FOR COMPENSATION OF COURT APPOINTED COUNSEL IN THE CIRCUIT COURTS OF SOUTH DAKOTA SCOPE

These rules apply to all cases where an attorney is appointed to represent an indigent including criminal proceedings, juvenile delinquency proceedings, children in need of supervision proceedings, dependent and neglected children proceedings, termination of parental rights proceedings, Habeas Corpus, and other special proceedings.

### DUTIES OF APPOINTED COUNSEL

A. Counsel who participate in this plan do so in fulfillment of their professional responsibility as officers of the Court. The limited amount of compensation accruing in no respect diminishes such responsibility. See: Rules 6.1 and 6.2 of the South Dakota Rules of Professional Conduct found in the Appendix to SDCL Chapter 16–18.

B. Appointed counsel shall continue to serve until their representation is terminated as provided by this plan or by Court Order.

C. While it is recognized that for various reasons a person may not be able to retain legal counsel on their own and should receive court appointed counsel, these same people do sometimes have the financial ability to make periodic partial payments to the county during the course of the attorney's representation. Thus, appointed counsel shall strongly encourage their appointed clients to report any improvement in their financial condition which would allow the client the ability to finance all or a part of the representation.

### TERMINATION OF APPOINTMENT OF COUNSEL

A. Appointed counsel in a criminal case involving a plea of guilty, nolo contendere, or guilty but mentally ill, shall cease to serve when the Court imposes sentence.

B. In the event that a defendant in a criminal case is convicted following trial, counsel shall advise the defendant of his right of appeal and of his right to counsel on appeal. If the defendant indicates a desire to appeal, counsel shall immediately advise the Court of that fact in writing. In such case, counsel shall continue to represent the defendant until such time as counsel is relieved by the order of a Circuit Court Judge or by the Supreme Court. If the defendant indicates no desire to appeal, counsel shall file a written statement to that effect, and thereupon counsel's appointment will terminate.

C. Representation by appointed counsel in other proceedings shall terminate when the purpose of the appointment is accomplished or when terminated by Court Order.

### COMPENSATION

All appointed counsel will be paid for all legal services on an hourly basis of $67.00 per hour beginning January 1, 2000.* [Beginning January 1, 2002, fees increase annually in an amount equal to the cost of living increase that State employees receive each year from the legislature.] *Based on two-thirds of an average hourly rate of $100.00 per hour for nonindigents. *Tappe v. Circuit Court, Etc.*, 326 N.W.2d 892 (S.D. 1982).

All flat fees will be eliminated.

### VOUCHERS FOR PAYMENT

A. All requests and vouchers for the payment of attorney's fees and expenses must be itemized and submitted to the judge presiding (trial judge) for approval.

B. Upon application by counsel and for good cause shown, the judge presiding in the case may authorize interim payments for services provided.

set forth the duties of appointed counsel and rate of compensation as well as a

## APPROVAL OR DISAPPROVAL OF ATTORNEY'S FEES AND COSTS

A. If the full amount of the voucher or statement for fees by counsel is not approved by the trial judge, the trial judge must explain, either orally or in writing, the reasons for change or modification of the statement or voucher submitted by counsel.

B. **Appeal.** If the attorney is dissatisfied with the amount of compensation allowed by the judge presiding in the case, the attorney may request that all judges in that circuit review the claim for compensation and hold a hearing thereon. A decision by the majority of the judges in that circuit shall become the amount of the fees and costs authorized.

### TRAVEL

Travel will be paid at the rate of $.80 per mile for both the use of the automobile and for the attorney's time on necessary travel. No trips are to be made out of the country where a matter is pending without prior approval of the judge; except for travel to and from the attorney's office and court.

### EXPERTS

A. A motion to hire expert witnesses must be made in writing to the judge presiding in the case. This motion must be:
1. Made in good faith;
2. Reasonable in all respects;
3. Timely and specifically set forth the necessity of the expert;
4. Specify that the client is financially unable to obtain the required service himself and that such services would otherwise be justifiably obtained were the client financially able.*

*State v. Sahlie*, 90 S.D. 682, 245 N.W.2d 476 (1976).

*Counsel must verify with their client that the client is not financially able to retain the desired service as of the time the motion is made.

B. If the judge approves the request, the order of appointment shall set a ceiling on the amount which can be expended for this purpose. That ceiling includes total outlay for the expert's services and expenses and cannot be exceeded without prior court authorization. Court appointed counsel shall send a copy of the order of appointment to the expert so that he or she has notice of the ceiling.

C. If at all possible, experts from the immediate area of the proceedings should be appointed. When setting the hourly rate of compensation for medical and mental health care professionals, the court should consider the rates allowed to the same professionals by the then current provider network plan for State of South Dakota employees.

### APPOINTMENT OF CO–COUNSEL

Because of their grave nature and/or complexity, certain cases can jeopardize an appointed counsel's practice and sometimes draw into question whether a person will receive effective assistance of counsel. In such case an appointed counsel may request the court to appoint co-counsel to be paid at the rates established herein. The approval or disapproval of such application for co-counsel rests in the sound discretion of the trial judge. *State v. Shape*, 517 N.W.2d 650 (S.D.1994).

### EXPENSES, PARALEGALS, and INVESTIGATORS

Appointed counsel shall be allowed reimbursement for expenses reasonably incurred. Costs shall be limited to reasonable copying costs, subpoena service fees, telephone charges, fax charges, fees for obtaining records and similar expenses. Costs ascribed to overhead, such as word processing, messengers, secretarial services and similar expenditures shall not be allowed. Charges for electronic research services such as Lexis or Westlaw will not be allowed unless by prior written court order upon a showing of special need. Counsel are encouraged to subcontract various services ordinarily done by themselves, such as legal research and file organization, if these services can be provided at a reduced rate. Appointed counsel are also encouraged to subcontract factual investigation services when they can be provided at a reduced rate. If appointed counsel want to utilize the services of a paralegal or investigator, counsel must comply with the section entitled "Experts". The rate of compensation for paralegals is $30.00 per hour.

### STATE–WIDE UNIFORMITY

The schedule of attorneys' fees will be uniform throughout the State of South Dakota and will go into effect on January 1, 2000.

**FAILURE TO FOLLOW THESE RULES WILL RESULT IN REFUSAL TO APPROVE THE BILL OR VOUCHER FOR SUCH EXPENSE.**

procedure to review a court's reduction of fees. Further, the rules were to be uniform for all circuits.

### Approval or Disapproval of Attorney's Fees and Costs

[¶ 13.] In conformity with the Rules for Compensation of Court Appointed Counsel adopted by all judicial circuits, the presiding judge of the Seventh Judicial Circuit entered Standing Order 00–1. Standing Order 00–1 duplicates the Rules for Compensation. As a right under the Rules and Order, an attorney who is dissatisfied with the amount of compensation allowed by the court may ask for a hearing. The procedure for review is set as follows:

A. If the full amount of the voucher or statement for fees by counsel is not approved by the trial judge, the trial judge must explain, either orally or in writing, the reasons for change or modification of the statement or voucher submitted by counsel.

B. Appeal. If the attorney is dissatisfied with the amount of compensation allowed by the judge presiding in the case, the attorney may request that all judges in that circuit review the claim for compensation and hold a hearing thereon. A decision by the majority of the judges in that circuit shall become the amount of the fees and costs authorized.

South Dakota Rules for Compensation of Court Appointed Counsel. The appeal hearing provides attorneys with the opportunity to explain and defend the reasonableness of their submitted fees to all of the judges in the circuit.

### Factors in Determining Reasonableness of Attorney Fees

[¶ 14.] In addition to the Rules, this Court has set forth a number of factors for judges to consider in determining the reasonableness of attorney fees. In *Tappe* we established a two-pronged test for court appointed attorney fees. First, the billed services must be reasonably necessary and second, the amount must be reasonably valued. 326 N.W.2d at 894. We noted, however, in *Tappe* that rates for representing indigent clients are generally below the market rates charged to non-indigent clients. *Id.* at 894–95. We recognize that the per hour fee as currently established is still below the hourly rate attorneys charge. Duffy is not challenging the per hour rate of $69 effective at the time of the assigned cases. The lower court made no adjustments to the per hour rate.

[¶ 15.] The factors, as established in *Tappe*, that a court must consider when determining reasonableness are as follows: "time spent and services rendered, the attorney's skills and experience, the complexity of the case, the attorney's overhead costs, and the character and importance of the litigation." *Id.* at 895. The *Tappe* Court noted the factors were not exclusive. *Id.* Since deciding *Tappe*, we have listed additional factors for a trial court to consider in determining what constitutes "reasonable" attorney fees. Some of the factors stem from the Model Rules of Professional Conduct. *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 111 (S.D.1994). The factors which are in addition to those enumerated in *Tappe* and are relevant to court appointments are: "the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"; "the fee customarily charged in the locality for similar legal services"; "the time limitations imposed by the client or by the circumstances"; and "the experience, reputation, and ability of the lawyer or lawyers performing the services." *City of Sioux Falls v. Johnson*, 2003 SD 115, ¶ 8, 670 N.W.2d 360, 362 (citing *Kelley*, 513 N.W.2d at 111) (quoting Model Rules of Professional Conduct, Rule

1.5). Another factor relevant to criminal cases and considered by other courts is the possible punishment involved. *Hulse v. Wilfvat*, 306 N.W.2d 707, 711 (Iowa 1981).

■ [¶ 16.] Based on the factors set forth in prior cases and the Model Rules of Professional Conduct, we conclude that when reviewing the reasonableness of court appointed attorney fees, a trial court must consider the following factors:

(1) the time spent and services rendered;

(2) the complexity of the case and difficulty of the questions involved;

(3) the character and importance of the litigation;

(4) the skill required to perform the legal service properly;

(5) the time limitations imposed by the client or by the circumstances;

(6) the fee customarily charged in the locality for similar legal services;

(7) the experience, reputation, and ability of the lawyer performing the services; and

(8) the possible punishment involved.

We gave further direction in *Kelley* on how to consider the factors starting by considering the time spent on the case. We said that no single factor should control:

> The fee should not be based on any one single factor but all of these matters should be taken into consideration. The only requirement is that the fee which the court fixes in each case must be reasonable for the services rendered.

*Kelley*, 513 N.W.2d at 111 (citing *City of Bismarck v. Thom*, 261 N.W.2d 640, 642 (N.D.1977) (quoting *Morton County Board of Park Comm'nrs v. Wetsch*, 136 N.W.2d 158 (N.D.1965))). We directed in *Kelley* that calculation of the fees must start with multiplying the attorney's hours and the typical hourly fees but explained:

> We are not under the illusion that a 'just and adequate' fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees. However, we are convinced that this simple mathematical exercise is the only legitimate starting point for analysis. It is only after such a calculation that other, less objective factors, can be introduced into the calculus.

*Kelley*, 513 N.W.2d at 112.

[¶ 17.] Additionally, the trial court is entitled to look at the case as a whole in light of the calculations and factors. The trial court in using its independent judgment must acknowledge the "high standard of diligence and preparation which is demanded of counsel in criminal cases." *Hulse*, 306 N.W.2d at 710. Although a court has the benefit of hindsight, it should not overlook the attorney's perspective in preparing for the case. *Id.* at 709.

### Trial Court Required to Explain Reasons for Reducing Fees

■ [¶ 18.] The trial court is required by rule to "explain, either orally or in writing, the reasons for change or modification of the statement or voucher submitted by counsel." *Supra* at n. 9. In other attorney fees cases, we have required the trial court to make specific findings based on the factors. *Hoffman v. Olsen*, 2003 SD 26, ¶ 10, 658 N.W.2d 790, 793; *Ridley v. Lawrence County Com'n*, 2000 SD 143, ¶ 13, 619 N.W.2d 254, 259; *Michlitsch v. Meyer*, 1999 SD 69, ¶ 20, 594 N.W.2d 731, 735; *Pengra v. Pengra*, 429 N.W.2d 754, 757 (S.D.1988). Counsel is responsible for providing an itemized statement in order for the courts to review the charges; the court, in turn, should articulate its rationale for reducing the fee either by specific findings or a clear explanation addressing

each of the reasonableness factors.[10] *See State v. Sidney,* 66 Wis.2d 602, 225 N.W.2d 438 (1975).

### Whether the Court Applied the Correct Legal Standard in Reducing Fees

[¶ 19.] Therefore, in determining whether a trial court "has regularly pursued its authority," we examine if the court applied an incorrect legal standard or whether the court abused its discretion to the extent that it acted illegally in setting the amount. The attorney is entitled to "just and reasonable" compensation. The judge determines whether it is "just and reasonable." In applying the correct legal standard, the court is required to explain orally or in writing the reasons for modifying the attorney's submitted voucher considering the factors enumerated in this opinion. The attorney has the burden of proof to show that the trial court applied the incorrect legal standard or acted illegally in setting the amount.

[¶ 20.] In two of Duffy's court appointed cases, her client, Kathryn Little was charged with two counts of felony child abuse. The two cases were assigned to Judge Kern. Little was also named as the respondent in an Abuse and Neglect petition over which Judge Davis presided. Little was severely mentally ill with severe borderline personality disorder and severe depression and had been diagnosed with an advanced stage of breast cancer. She attempted suicide and was committed to Human Services Center three times during Duffy's representation. Duffy's affidavit indicated that the State refused to plea

bargain the criminal charges. As part of the defense preparation, Duffy claimed that several evidentiary and substantive issues arose which required research, briefing and interviewing of an expert.

[¶ 21.] Duffy was appointed to represent the defendant Lucas Wilson in two cases. In the one case, Wilson was charged with felony possession of methamphetamine, ingesting, possession of marijuana and drug paraphernalia which was assigned to Judge Kern. In the other case, Wilson was charged with Driving While Under the Influence (DUI) and felony Possession of Methamphetamine which was assigned to Judge Tice. Duffy claims that because of the time spent in preparation, she was able to obtain a favorable plea agreement wherein the State dismissed the felony charge and reduced the DUI to reckless driving, thus eliminating the need for a jury trial.

[¶ 22.] Duffy submitted itemized bills for each case which included expenses and the time spent on specific tasks billed at the authorized per hour rate. Judge Kern wrote Duffy a letter informing her that she had reduced the billings for the four cases involving clients Little and Wilson. In the letter, the judge indicated that the bills were "too high." The judge acknowledged that the clients were difficult to work with and also recognized the skills and abilities of counsel. The entire content of the letter to Duffy is as follows:

> Enclosed please find copies of the front page of your claims filed against Pennington County for provision of ser-

---

10. *Sidney* states: "Claims for legal services should be submitted to the court by verified petition explaining the nature and extent of the work and in itemized form showing not only the amount of time spent but also the nature of the work and the problems involved in sufficient detail so that it can be properly appraised and a reasonable fee determined for the services. The facts so stated should be considered prima facie evidence, and modifications, allowances, and disallowances of the items made by the court and the reasons therefor should be set forth in writing and an opportunity given to counsel to contest the modifications." *Id.* at 441.

vices as Court-appointed legal counsel for Ms. Little and Mr. Wilson. I have reduced your bills as indicated. I'm enclosing for your review the Rules of Compensation for Court-appointed Attorneys. If you are dissatisfied with the amount of compensation allowed you may request that all of the Judges in the Circuit review the Claim for Compensation and hold a hearing thereon. A decision by the majority of the Judges shall become the amount of fees and costs authorized.

I realize that both of these clients have been difficult but Mr. Wilson's case did not proceed to trial and fees in the excess of $7,000.00 are simply too high. Similarly, Kathryn Littles' case has not yet proceeded to trial and the bills are in excess of $5,000.00.

I have the greatest personal respect for your abilities and the vigor with which you represent your clients. However, we have a limited budget for Court-appointed attorney's fees and the Court bears the duty and obligation of monitoring the fees expended.

Please do not hesitate to contact me further.

Sincerely, Janine M. Kern
Circuit Court Judge

Judge Kern's explanation did not address the factors to be used in determining whether the fees were reasonable or how those factors entered into her decision to reduce Duffy's fees. It is apparent from the letter that the county's budget for court appointments played some part in her determination to cut the fees. Although understanding the sensitivity to county budgets, the courts have not recognized this as a factor in determining a reasonable attorney fee. The presiding judges have set the hourly fee paid to court appointed counsel below the amount an attorney would charge to private clients. Consequently, the fees paid for court appointments are already discounted by that reduced hourly charge.

[¶ 23.] Upon Duffy's request, the judge provided her with a marked-up version of two of her submitted fees; no explanation accompanied the reduced fees. Judge Kern had struck at least 50 itemized charges by either crossing out the charge completely or by entering a lower figure. For example, Duffy billed 4 hours and 10 minutes for "preparation for child competency hearing; attended hearing; brief meeting with client after meeting." The hearing, which had been noticed by the State, lasted 2 hours 40 minutes. Judge Kern highlighted the services, crossed out the fee of $282.90 which was based on the charge of $69 an hour for 4.1 hours and wrote in $138 (representing $69 an hour for 2 hours), thus allowing reimbursement for less time than the attorney spent at the hearing and none for preparation and meeting with her client. For the services "phone call from Matt Brown [State Attorney's Office] regarding a plea agreement; phone call to client regarding the same," Duffy billed $34.50 for one-half hour. This item was completely disallowed. Whether the reductions relate to any of the reasonableness factors is not apparent. Disallowing full compensation for a court hearing or for communications with one's own client is questionable since an attorney's professional responsibility would require it. For the fees pertaining to the Wilson files, the judge merely drew a line through the total amount and reduced it.

[¶ 24.] Judge Kern's explanation for the reductions in the fees was not based upon the factors nor did the judge explain the reasons for the cuts adequately for any of the files. One of the bills the judge reduced was actually presided over by

Judge Tice.[11] Another of the cases was handled by Judge Davis. Judge Tice and Judge Davis would have been in a better position to determine the reasonableness of the fees in those cases.

[¶ 25.] A trial judge is required to explain the cuts based upon the reasonableness factors. Initially, all that Duffy received was the letter from Judge Kern indicating that the bills were too high. After requesting further explanation, Duffy received copies of the four vouchers all with the total claimed amount reduced. Two vouchers showed total or partial reductions of specific hourly charges. There were no communications in the record from either Judge Tice or Judge Davis prior to the panel's review concerning the reductions.

[¶ 26.] The judge who presides over the case and determines that an attorney's fees are unreasonable has an obligation to apply the correct legal standard when making that decision. The judge is also required to explain the reasons for reducing the fees based upon that standard. The legal standard is based upon the factors that this Court has addressed in prior cases. This does not mean, of course, that judges must explain a reduction of fees by counter-itemizing each line in an attorney's bill. Judges may examine the bill as a whole and provide an explanation using the required factors. This was not done. Duffy asked for more explanation in order to present her justification to the review panel. Receiving only the Kern letter and reduced vouchers, Duffy attempted to present her justification to the panel. The only further explanation received by Duffy was the letter she received from the reviewing panel after the hearing. Without the explanation prior to the hearing, Duffy was placed in a position of guessing at the rationale of the reductions. This is not the procedure contemplated by *Tappe* nor established by the Rules.

[¶ 27.] Nonetheless, Duffy provided the panel with evidence and explanation. Duffy explained, in detail, the necessity and justification for the time spent and her reasons for defending the cases in the manner she did. She submitted documents from the cases relevant to the bills, and she provided affidavits from practicing attorneys who were of the opinion that the time and activities she performed were reasonable. She was allowed a short oral argument to the panel. She pointed out in her appeal that she was at a disadvantage because without an explanation or rationale for the cuts, she was unclear what she needed to justify.

[¶ 28.] The panel of judges, consisting of Judge Kern, Judge Tice, Judge Davis and Judge Trimble, affirmed the fee reduction and wrote a letter. In its review of the cases, the panel recognized the *Tappe* decision and the factors listed therein. The panel explained in its letter to Duffy why the reductions were appropriate. This is the first time that Duffy actually received a specific explanation for the reductions.

[¶ 29.] The panel determined that as to one of the Wilson cases, "[t]he case was neither unusually complex nor difficult. The defendant received a probationary sentence similar to that uniformly obtained by Defendants of this age in these circumstances." The panel further concluded Duffy spent too much time and effort on suppression issues. The panel recognized that the judge presiding over the case should have been the one to review the

---

11. Judge Tice provided a letter of explanation to Duffy after Duffy filed the Writ with this Court.

bill; however, the panel concluded that Judge Tice had reviewed Judge Kern's reductions and agreed to them. Although the panel appears to have considered the complexity of the cases, it failed to take into consideration the other factors in determining the reasonableness of the fee. The panel stated that it used its "collective legal experience" and its review of other court appointed bills to find that Judge Kern did not abuse her discretion.

[¶ 30.] As to the criminal case against Little, the panel found the case not to be "extremely complicated" with "straight forward issues that are standard in any criminal cases." The panel concluded as follows:

> Judge Kern provided you with a highlighted copy of your bill showing line items reduced or deleted from your bill. You have now submitted detailed explanations for each entry. Even after reviewing your explanations we feel the changes, when reviewed in their totality, are unreasonably high. We do not doubt that you worked the hours reported but we find that the number of hours spent on the tasks accomplished are excessive.
>
> We believe you to be a very competent and conscientious attorney. There will always be additional work that can be done in any case. The Court bears the burden and responsibility of monitoring court appointed fees while at the same time assuring constitutionally sufficient representation for indigent Defendants.

Although the panel attempted generally to address some of the reasonableness factors in *Tappe,* it did not address all of the factors or require the judges assigned to the cases to do so either.

[¶ 31.] This rule setting forth the procedure of reviewing court appointed attorney fees is a relatively new procedure and standard and one which this Court has not previously addressed. Therefore, the lower court did not have the benefit of our direction prior to the Duffy matter being raised. It is apparent that the judges in good faith attempted to follow the rule. However, there are several things about the process they used which do not meet the standard as set forth in this opinion.

[¶ 32.] The process used was flawed in several respects. First, the judge presiding over the cases, in the first instance, should have given the appointed attorney the explanation for the reductions specifically addressing the reasonableness factors. Secondly, the panel required Duffy to justify her bills without Duffy knowing why they were being denied. The panel should have required each judge who presided over the case to give Duffy an explanation based upon the factors before conducting the review hearing. With those explanations, Duffy would have been able to address the factors and reductions in an attempt to justify her charges.

### Remand to Apply Correct Legal Standard

[¶ 33.] With a writ of certiorari, we do not review whether the judge or panel's decision is right or wrong. We are limited to determining whether the judge or panel regularly pursued its authority. We conclude that Duffy has met the burden of proof. The judges presiding over the cases, in the first instance, failed to apply the correct legal standard in determining whether Duffy's fees were reasonable; consequently, the panel's review also contravened its authority. By not applying the correct legal standard, the lower court has failed to "regularly pursue its authority." We, therefore, remand for the Seventh Judicial Circuit to apply the correct standard and procedure. On remand, the trial judge who presided over each case should apply the correct legal standard by

considering the factors and by giving an explanation based on those factors. If dissatisfied, Duffy has a right to request a review by all the judges of the Seventh Judicial Circuit.

### Appellate Attorney fees

[¶ 34.] Duffy has requested attorney fees in conjunction with her Petition for Writ of Certiorari. Attorney fees can only be awarded if authorized by statute. SDCL 15–26A–87.3. At oral argument, Duffy claimed that this Court could award attorney fees if the trial court's action was vexatious. She has not cited authority nor offered evidence of vexatious conduct to support her request. Her request is denied.

[¶ 35.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.