#23623-dismiss in pt and aff in pt-JKK

**2006 SD 87**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MIDCOM, INC.,             Plaintiff and Appellee,

  v.

ANTHONY J. OEHLERKING,        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE ROBERT L. TIMM
Judge

\* \* \* \*

ROBERTO A. LANGE of
Davenport, Evans, Hurwitz &
Smith, LLP            Attorney for plaintiff
Sioux Falls, South Dakota     and appellee.

COURTNEY R. CLAYBORNE
MICHAEL C. LOOS of
Clayborne & Loos, P.C.        Attorneys for defendant
Rapid City, South Dakota     and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 20, 2006

OPINION FILED **09/27/06**

#23623

KONENKAMP, Justice

[¶1.]        While employed at Midcom, Inc., Anthony J. Oehlerking signed a covenant not to compete.  When he resigned to work for a direct competitor, Midcom sought to enforce the covenant.  Oehlerking claimed, however, that it was void and otherwise unenforceable.  After a trial, the circuit court ruled that the covenant was valid and enforceable.  The court issued two judgments, one enjoining Oehlerking from violating the covenant, and one awarding Midcom attorney's fees based on a provision in the contract allowing a reasonable award of fees to the prevailing party.  Oehlerking appeals both judgments.  Because Oehlerking's notice of appeal from the first judgment was untimely, we dismiss that appeal.  On the second judgment, we affirm the award of attorney's fees.

## Background

[¶2.]        Midcom is based in Watertown, South Dakota.  It produces electronic components primarily for the telecommunications industry.  Just after he received his degree in electrical engineering, Oehlerking was hired by Midcom in 1994 as a design engineer.  Over the next several years, he earned promotions and salary increases.  Then, in 1998, Midcom offered him a "Performance Stock Unit Appreciation Rights Agreement."  Included in the agreement was a covenant not to compete provision.  He signed a second similar agreement in February 2000 with another noncompetition clause.  By its terms, Oehlerking was restricted from competing directly or indirectly with Midcom anywhere it does business for at least two years after leaving his job with Midcom.

-1-

[¶3.] In the late 1990s, Midcom's business did particularly well. Oehlerking received sizable bonuses in addition to his $85,000 salary as the manager of the LAN business unit. According to Midcom, for fiscal years 1999 and 2000, the bonuses Oehlerking received in addition to his salary were $36,517 and $20,984 respectively. In the latter part of 2000, however, Midcom suffered a significant downturn in business. Effective April 2001, Midcom discontinued employee bonuses, reduced salaries, and ceased its contributions to retirement plans.

[¶4.] As a consequence, Oehlerking suffered a twenty percent salary reduction. He believed that the true effect was a sixty-five percent reduction because he lost the bonuses and contributions to his retirement account. His taxable income before the reduction, as reflected by his tax documents, was $115,901 in 2000, and $90,041 in 2001. In 2002, his income fell to $71,404, and, in 2003, it increased to $79,055. According to Midcom, though, his income before the reductions was "unusually high" because of the bonuses paid for fiscal years 1999 and 2000.

[¶5.] Nonetheless, when Midcom instituted its benefits reductions, it assured Oehlerking and other employees that the salaries would eventually be restored. Indeed, Midcom began increasing salaries in July 2002. Oehlerking's salary went from $70,054 during the reduction, to $85,800 after the restoration. For Oehlerking, however, this was not a "restoration" because he still did not receive bonuses or retirement contributions. Equally detrimental, in Oehlerking's view, was his demotion from the manager of the LAN business unit to a product manager. In losing his managerial responsibilities, he felt "deeply saddened,

psychologically distressed, and humiliated." According to Midcom, however, he was demoted because the company had restructured. In fact, Oehlerking's last performance review, in April 2004, was positive. Also, the demotion did not affect his salary. And, according to the company, he retained the same, if not more, job responsibilities.

[¶6.]     Despite these changes, which began in 2001, Oehlerking continued with the company. In 2004, however, he was contacted by Pulse Engineering of San Diego, California and offered employment that would return some of the benefits he originally enjoyed with Midcom. This opportunity was attractive to Oehlerking, and, on June 25, 2004, he gave Midcom his resignation letter. Thereafter, he was invited to meet with his supervisor, in-house counsel, and Midcom's president. Oehlerking went to the meeting thinking that Midcom might present him with a counteroffer. But the covenant not to compete was the only item on the agenda. Pulse Engineering is a direct competitor of Midcom, selling the same products for the same applications.

[¶7.]     After he left in July 2004, Midcom brought suit to enforce the covenant not to compete by seeking an injunction, as well as attorney's fees allowable under the agreement Oehlerking had signed. On July 29, 2004, after an evidentiary hearing, the circuit court issued a preliminary injunction enforcing the terms of the agreement and enjoining Oehlerking from accepting or continuing employment with Pulse Engineering.

[¶8.]     In trial the following October, Oehlerking argued that Midcom detrimentally altered all material aspects of his employment so much that it

amounted to a "constructive discharge." Under this theory, he claimed that the covenant was void. He further asserted that Midcom was estopped from enforcing the covenant against him because it had not enforced the same covenant against at least three other employees. The court rejected Oehlerking's arguments, finding that the covenant was enforceable and that Midcom was not estopped from enforcing the agreement.

[¶9.] After the trial, Midcom requested attorney's fees and costs of $18,360.05.[1] Oehlerking objected, claiming that the fee was unreasonable in light of the fact that this case proceeded so quickly, the issues were not new, and his total fees, by contrast, were $3,029. A hearing was held on February 2005, and the court concluded that the fees were reasonable and awarded Midcom the entire amount requested.

[¶10.] On appeal, Oehlerking argues that (1) the circuit court erred in enforcing the covenant not to compete, and (2) the court erred in its award of attorney's fees. Midcom contends that Oehlerking failed to timely file his notice of appeal on the first issue.

### 1. Timeliness of Appeal

[¶11.] If Oehlerking failed to timely appeal, we will have no jurisdiction to consider his arguments. Long v. Knight Const. Co., Inc., 262 NW2d 207, 208-09 (SD 1978). Under our former version of the rule, in effect at the time, an appeal was

---

1.     Under our new rule, effective July 1, 2006, "unless otherwise provided by statute or order of the court, [motions for attorneys' fees] must be filed no later than fourteen days after entry of judgment[.]" See SDCL 15-6-54(d)(2)(B).

timely when a notice of appeal was filed "within sixty days after the judgment or order shall be signed, attested, filed, and written notice of entry thereof shall have been given to the adverse party." SDCL 15-26A-6.[2] *See* Sawyer v. Farm Bureau Mut. Ins. Co., 2000 SD 144, ¶9, 619 NW2d 644, 647. We regard the term "judgment" to mean a "judgment which is final rather than interlocutory." Riede v. Phillips, 277 NW2d 720, 722 (SD 1979) (citations omitted). To be final, a judgment must "finally and completely adjudicate all of the issues of fact and law involved in the case." Griffin v. Dwyer, 88 SD 357, 358, 220 NW2d 1, 2 (1974) (citing Dolan v. Hudson, 83 SD 144, 156 NW2d 78 (1968)); *see also Riede*, 277 NW2d at 722. As the test for finality, we consider the "substance of the decision rather than its form or name[.]" *Griffin*, 88 SD at 359, 220 NW2d at 2.

[¶12.]	In this case, Oehlerking seeks review of two judgments. The first judgment was dated November 8, 2004, and was filed on December 9, 2004. Notice of entry of the judgment was sent by first class mail to Oehlerking on December 14, 2004. The second judgment was dated and filed on February 23, 2005. Notice of entry of this judgment was sent by first class mail to Oehlerking on March 10, 2005.

[¶13.]	The first judgment appears to "finally and completely" adjudicate all issues relating to the enforceability of the covenant not to compete.[3] *See Griffin*, 88

---

2.	This rule was amended, effective July 1, 2006:  for all judgments filed from that date on, an appeal must "be taken within *thirty* days after the judgment or order shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party." SDCL 15-26A-6 (emphasis added).

3.	The first judgment stated:

(continued . . .)

SD at 358-59, 220 NW2d at 2. It was final on its face and capable of being executed.[4] The second judgment, on the other hand, addressed issues collateral to the underlying merits of Midcom's claim, and in no way altered or amended the first judgment.[5] Nonetheless, Oehlerking claims that the first judgment could not become final until the court considered the issue of attorney's fees, because the fees were part of the single action instituted by Midcom under the terms of the covenant. Oehlerking places emphasis on the court's language in the February 23, 2005 judgment that "these Findings of Fact and Conclusions of Law and Judgment,

---

(. . . continued)

> Ordered, Adjudged and Decreed Defendant Anthony J. Oehlerking is enjoined through and until June 25, 2006, from being employed, directly or indirectly, by Pulse Engineering, Inc., or any affiliate thereof, or any other company carrying on a like business to Midcom, Inc., in the United States and those countries where Midcom. Inc. continues to sell or solicit for sale its products. It is further

> Ordered, Adjudged and Decreed that a declaratory judgment enter until [sic] SDCL 21-24 that the non-compete covenant is valid, binding, and enforceable on Anthony J. Oehlerking.

4. The amount of taxable disbursements awarded to Midcom was left blank, indicating that it was "to be inserted by the Clerk or determined by the [c]ourt if there is an objection to the amount." We previously stated that leaving this amount blank does not affect the finality of the judgment. *See* Doughtry v. Hyde, 50 SD 122, 208 NW 581, 582 (1926).

5. The second judgment provided:

> Ordered, Adjudged and Decreed that Plaintiff's Motion For Award of Attorney's Fees and Disbursements is granted and that Plaintiff have and recover $18,360.05 for attorney's fees and disbursements from Defendant. It is further

> Ordered, Adjudged and Decreed that these Findings of Facts, Conclusions of Law, and Judgment, together with the Findings of Fact, Conclusions of Law
> (continued . . .)

together with the Findings of Fact, Conclusions of Law and Judgment filed December 9, 2004, *are and constitute a final judgment in the case.*"  (Emphasis added).

[¶14.]    This Court has not had occasion to review whether a judgment is final for purposes of an appeal when there is a later judgment that awards attorney's fees based on the first judgment, which adjudicated the underlying merits.  This question, however, has been the subject of frequent litigation.  The United States Supreme Court's decision in *Budinich v. Becton Dickinson & Co.* is instructive.  486 US 196, 108 SCt 1717, 100 LEd2d 178 (1988).  The specific issue addressed in *Budinich* was "whether a decision on the merits is a 'final decision' as a matter of federal law under [28 USC] §1291 when the recoverability or amount of attorney's fees for the litigation remains to be determined."  *Id.* at 199, 108 SCt at 1720, 100 LEd2d 178.  In accord with 28 USC §1291 "'all final decisions of the district courts' are appealable to the court of appeals."  *Id.* at 198-99, 108 SCt at 1720, 100 LEd2d 178 (quoting 28 USC § 1291).

[¶15.]    The Supreme Court recognized that generally a "final decision" is defined as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Id.* at 199, 108 SCt at 1720, 100 LEd2d 178 (citing Catlin v. United States, 324 US 229, 233, 65 SCt, 631, 633, 89 LEd2d 911 (1945)).  Finality still inheres in the judgment or order even when there is a

_____

(. . . continued)
    and Judgment filed December 9, 2004, are and constitute a final judgment in the case.

question to be decided after the judgment ending litigation on the merits, if it does "not alter the order or moot or revise the decisions embodied in the order." *Id.* (citations omitted).

[¶16.] The Court indicated that a question relating to an award of attorney's fees would fit this description because the request is generally "collateral to" and "separate from" the judgment on the merits. Specifically, the Court stated that "[a]s a general matter, at least, we think it indisputable that a claim of attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action." *Id.* at 200, 108 SCt at 1721, 100 LEd2d 178. Declining to adopt a rule that requires determining how the fees are characterized—part of the merits or collateral to the merits—the Court opted for a "bright-line rule, which accords with traditional understanding, that a decision on the merits is a 'final decision' for purposes of §1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case." *Id.* at 202-03, 108 SCt at 1722, 100 LEd2d 178. This bright-line rule preserves "operational consistency and predictability in the overall application of §1291." *Id.* at 202, 108 SCt at 1722, 100 LEd2d 178.

[¶17.] Also helpful is the analysis from the Eighth Circuit Court of Appeals of two different approaches to characterizing an attorney's fee request. Obin v. District No. 9 of the Int'l Ass'n of Machinists & Aerospace Workers, 651 F2d 574, 583 (8thCir 1981). The first approach regarded attorney's fees as equivalent to a claim of costs; thus, not an attempt to amend or alter a judgment. The second

distinguished attorney's fees from cost disbursements because costs, arguably, are "capable of being taxed by the clerk" and attorney's fees are most likely determined after a hearing on the matter and after consideration of submissions from the parties. *Id.* at 580. Also, in the second approach, fees were considered different because an appeal often resulted from an award of attorney's fees, and costs almost never gave rise to an appeal.

[¶18.] Rejecting the first approach, the court in *Obin* agreed that attorney's fees differ from cost disbursements. However, the court did not accept the view in the second approach that a request for attorney's fees is integral to the final judgment on the merits. Rather, the court stated that an award of fees merely seeks what is due from the judgment, and "differs in effect from a judgment on the merits[.]" *Id.* at 581 (citing Knighton v. Watkins, 616 F2d 795, 797 (5thCir 1980)). Therefore, the court, "[f]rom both a policy and a legal standpoint," declared that "a claim for attorney's fees should be treated as a matter *collateral to and independent of the merits of the litigation.*" *Id.* at 583 (emphasis added).

[¶19.] Deciding not to treat an award of attorney's fees as part of the final judgment, the court feared the possibility that appellate courts could be inundated with successive appeals arising out of the same litigation.

> This court has a real concern over fragmentation of appeals. In the interests of orderly and expeditious consideration of all issues arising from a single lawsuit, disputes on appeal over the merits, as well as disputes regarding the allowance of attorney's fees to the prevailing party, should ordinarily be considered and decided by this court in either a single or consolidated appellate proceeding. This court deems it essential that all district courts follow a consistent practice of promptly hearing and deciding attorney's fees claims . . . so that any appeal by an aggrieved party from the allowance or disallowance of fees can be

considered by this court together with any appeal taken from a final judgment on the merits.

*Id.* Consequently, when a final judgment has been entered on the merits in the Eighth Circuit, the time for appeal begins from the date of entry of that judgment, regardless of a subsequent determination of attorney's fees.[6]

[¶20.]        We find persuasive the rationales offered by both the Supreme Court in *Budinich* and the Eighth Circuit in *Obin*, and today adopt the bright-line rule that a later decision on attorney's fees does not affect the finality of a previous judgment on the merits. To conclude otherwise—that a determination of finality depends on a future development of the facts and later explanation of the surrounding circumstances—would only leave lawyers and litigants in confusion on when a judgment is final for purposes of appeal. Following the federal rule will assist in providing a clear understanding of when a judgment is final and appealable under SDCL 15-26A-6. And in the interest of avoiding piecemeal appeals in the future, lower courts should "delay entry of a final judgment 'pending determination of attorney's fee claims' and later enter 'a single judgment

---

6.        In two cases, the Eighth Circuit Court of Appeals found cause to distinguish *Budinich's* bright-line rule. *See* Maristuen v. Nat'l Sales Ins. Co., 57 F3d 673 (8thCir 1995); Justine Realty Co. v. American Nat'l Can Co., 945 F2d 1044 (8thCir 1991);. However, both decisions affirm the principal that a final judgment on the merits is final for purposes of an appeal, regardless of a later request for attorney's fees for the litigation. *See Maristuen*, 57 F3d at 678 (Because the original and first judgment had been later amended by the district court to include a quantified amount for the attorney's fees award, the first, unamended, "judgment was not final because it could not have been executed."); *Justine*, 945 F2d at 1049 (the party's motion for fees related to costs incurred *pre-litigation*; therefore the court found that it was not "*for the litigation*" and the decision on the merits was not final) (emphasis added).

-10-

determining all issues.'" *See* Maristuen v. Nat'l Sales Ins. Co., 57 F3d 673, 678 (8thCir 1995) (quoting *Obin,* 651 F2d at 583).

[¶21.]    Oehlerking does not dispute the timing of the first judgment. It was filed on December 9, 2004, and notice of its entry was sent on December 14, 2004. Thus, under SDCL 15-26A-6, for his appeal to be timely he had to file the notice of appeal "within sixty days after the judgment or order shall be signed, attested, filed, and written notice of entry thereof shall have been given to the adverse party." *See Sawyer*, 2000 SD 144, ¶9, 619 NW2d at 647. Oehlerking filed his notice of appeal on April 22, 2005, well beyond the permitted time. Because Oehlerking's appeal is untimely, we do not have jurisdiction to consider his claims. His appeal from the December 9, 2004 judgment is dismissed.

### 2. Attorney's Fees

[¶22.]    Oehlerking's appeal from the February 23, 2005 judgment was timely. Therefore, we must determine whether the circuit court's award of attorney's fees to Midcom was reasonable. After the court ruled that the covenant not to compete was enforceable and enjoined Oehlerking from acting in violation of its terms, Midcom sought $18,360.05 in attorney's fees. Oehlerking does not dispute that the contract provides that the prevailing party may recover their reasonable attorney's fees for the litigation. Midcom was the prevailing party on all issues in the underlying action. Nonetheless, Oehlerking insists that Midcom's request was "not reasonable in light of the time, effort and work performed."

[¶23.]    We review an award of attorney's fees under the abuse of discretion standard. *See* Crisman v. Determan Chiropractic, Inc., 2004 SD 103, ¶24, 687

NW2d 507, 513 (citations omitted). After conducting a hearing on Oehlerking's objections, the circuit court determined, in light of this Court's reasonableness factors, that Midcom's request was in fact reasonable. *See id.* ¶27 (citing Duffy v. Circuit Court Seventh Judicial Circuit, 2004 SD 19, ¶16, 676 NW2d 126, 134; Atchison v. Seventh Judicial Circuit, 2004 SD 20, ¶3, 676 NW2d 814, 816). While the court indicated that the case was handled on a somewhat expedited basis, it considered the case to be moderately complex, with unique issues. Specifically, Midcom was required to research Oehlerking's constructive discharge defense and his claim that Midcom was estopped from enforcing the covenant. Also, Midcom had the burden of proving the enforceability of the covenant not to compete. The court found that "Midcom's attorneys did additional work beyond what Oehlerking's attorneys did in this case." After concluding that "[t]he experience, reputation, and ability of the lawyers performing the services were good," the court declared that the fee request was "reasonable under the circumstances and was justified by the quality of the pleadings and attorney performance."

[¶24.] When awarding Midcom attorney's fees, the circuit court considered the required factors identified by this Court. In light of those factors and the case as a whole, the court then found Midcom's fee request to be reasonable. Based on our review of the court's decision, we cannot say the court abused its discretion when it awarded Midcom $18,360.05 in attorney's fees and costs.

[¶25.] Midcom has also filed a motion seeking $9,007.50 in appellate attorney's fees, relying on the same contract provision. Midcom is the prevailing party on appeal and therefore fees are allowable. *See* SDCL 15-17-38; Schuldies v.

Millar, 1996 SD 120, ¶37, 555 NW2d 90, 100 (citations omitted).  As required by SDCL 15-26A-87.3, Midcom also submitted a verified and itemized statement of costs incurred and legal services rendered for this appeal.  We award Midcom $2,500 as reasonable for this appeal.

[¶26.]     On Issue 1, the appeal is dismissed; on Issue 2, the judgment is affirmed.

[¶27.]     GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, concur.

[¶28.]     SABERS, Justice, concurs in part and dissents in part.


SABERS, Justice (concurring in part and dissenting in part).

[¶29.]     I agree with the Court's conclusion on Issue I.  I dissent on the majority's decision to affirm the trial attorney's fees and award appellate attorney's fees.  The trial court's award of $18,360.05 in attorney's fees for the trial was excessive.  This was the full amount requested.  Moreover, if this Court is going to affirm the excessive award, then we should not award any appellate attorney fees since Midcom has already received more than a reasonable amount.

[¶30.]     The trial court awarded Midcom, $18,360.05 in attorney's fees for the trial phase.  Oehlerking's attorney's fees amount to a little over $3,000.  While it is true Oehlerking appeared pro se for a portion of the litigation period, he retained an attorney for three out of the five months.  Yet, Oehlerking's attorney's fees amount

to a little over $3,000.[7]  The trial court concluded the rest of the factors supported an award of $18,360.05 for attorney's fees.  While the factors may be present for an award of *some* attorney's fees, an award of over $18,000 is excessive and unreasonable.

[¶31.]     While the standard of review of a trial court's award of attorney's fees is an abuse of discretion, we need not turn a blind eye to reason.  In fact, the attorney's fees are required to be reasonable.  Duffy v. Circuit Court Seventh Jud. Cir., 2004 SD 19, ¶16, 676 NW2d 126, 134.  The majority determined the trial court did not abuse its discretion in awarding the requested amount of trial attorney fees.  However, the majority then goes on to award $2,500 for appellate attorney fees when Midcom requested $9,007.50.  When the full amount requested is unreasonable on appeal, then the full amount requested and granted is unreasonable for trial attorney's fees also.  Furthermore, if we are going to affirm the award of an unreasonable amount in trial attorney fees, then we should not award any more on appeal.  An award of attorney's fees is allowable, not mandatory.  In any event, they must be reasonable.

---

7.     Midcom argues the attorney's fees would have been another $1,150 had Oehlerking's counsel billed for travel time.  Even then, the total attorney's fees would have been $4,150, still substantially less than Midcom's requested fees.